**In the Matter of Arthur J. SULLIVAN, a Member of the Bar of the Supreme Court of Delaware.**

Supreme Court of Delaware.

Submitted: May 27, 1987.
Decided: Aug. 19, 1987.

Victor F. Battaglia (argued) and Edward F. Kafader, Biggs & Battaglia, Wilmington, for Mr. Sullivan.

L. Susan Faw, Disciplinary Counsel, Bd. on Professional Responsibility, Wilmington.

Before CHRISTIE, C.J., HORSEY and MOORE, Justices.

PER CURIAM.

Arthur J. Sullivan has been a member of the Delaware Bar since 1955. By Order of this Court, dated December 27, 1984, Mr. Sullivan was suspended from the practice of law in this State pending further proceedings before the Board on Professional Responsibility (the Board). After a hearing, the Board's Final Report recommended that Mr. Sullivan be disciplined because of the number and seriousness of his acts of misconduct. The respondent has filed objections to the Board's Final Report.

At the disciplinary hearing, Mr. Sullivan admitted all factual allegations of the petition to discipline, but presented a defense of mental incompetence under Board Rule 20(g).[1] The respondent contends that the

---

1. Rule 20(g) provides:

(g) Mental Incompetency as a Defense to Misconduct.

(1) Mental incompetency is a complete defense to conduct of a lawyer which would otherwise warrant disciplinary action:

a. If such conduct was the result or consequence of mental incompetency, and

b. If the mental incompetency which was responsible for such conduct has been cured so completely that there is no reasonable ba-

sis to believe there will be a recurrence of the condition.

The burden of proof of this defense, in all its aspects, is upon the respondent.

(2) If the respondent is able to sustain the burden of proof as to his mental incompetency at the time of the conduct of which complaint is made, but is unable to prove recovery to the extent indicated in item b. in subdivision (1) of this paragraph and the Board has reason to believe that such recovery is possible, the Board will recommend to the Court

Board erred in concluding that he had failed to prove mental incompetence under Board Rule 20(g)(1). Mr. Sullivan also claims that the Board failed to consider his mental condition as a mitigating factor, and erroneously refused to consider placing him on disability inactive status under Board Rule 20(c).[2] The record fully supports the Board's findings. Given the seriousness and extent of Mr. Sullivan's misconduct, we have no alternative but to disbar him.

## I.

The Board found that the respondent has engaged in a pattern of serious misconduct. In 1976 he was disciplined by this Court for failing to preserve the identity of clients' funds, withholding and converting to his own use funds belonging to others, and filing false Certificates of Compliance regarding the handling of clients' funds. His later misconduct is of a similar nature.

In July, 1984, this Court found after a hearing that Mr. Sullivan had again failed to maintain a segregated escrow account for clients' funds, had failed to maintain a balance in his escrow account sufficient to pay all clients' funds therein, and failed to keep adequate records of the disposition of these funds. In numerous instances during the 1980's he also failed to record various documents associated with real estate transactions, including mortgages and deeds, and misappropriated clients' funds for his own use.

On July 27, 1984, this Court entered an order prohibiting Mr. Sullivan from handling fiduciary funds. However, he violated that order on four separate occasions. During a second hearing before this Court in December, 1984, he denied having violated the order, and represented that he had not held any clients' funds in escrow since the July 27, 1984 order. At the time of these false representations, Mr. Sullivan had in fact conducted at least four real estate settlements, and had held clients' funds in connection with those transactions. On April 16, 1985, respondent was found in contempt for his knowing and deliberate violation of the July, 1984 order and his false testimony of December, 1984.

In addition, on three separate occasions Mr. Sullivan falsely represented to this Court that certain funds in the case of *Home Insurance Co. v. Honaker*, Del. Supr., 480 A.2d 652 (1984), were being held by him in a segregated escrow account. In fact they had been commingled with Mr. Sullivan's personal funds and misappropriated by him.

At the hearing before the Board, Mr. Sullivan admitted these facts, but asserted the defense of mental incompetence. He further claimed to have made full restitu-

---

that respondent be suspended until such time as he can prove such recovery; otherwise the Board shall recommend his transfer to disability inactive status.

(3) Any respondent defending on the grounds of mental incompetency shall be suspended immediately until and unless he shall sustain the burden of proof that he has been cured so completely that there is no reasonable basis to believe there will be a recurrence of the condition.

**2.** Rule 20(c) provides:

(c) Proceedings to Determine Incapacity. Information relating to a lawyer's physical or mental condition which adversely affects his ability to practice law shall be investigated by counsel and shall, if there are reasonable grounds to believe the interest of respondent's clients or the public is endangered, be the subject of formal proceedings to determine whether the respondent shall be transferred to disability inactive status. The procedures and hearings shall be conducted in the same manner as disciplinary proceedings, except that all such proceedings shall be confidential. The Board may take or direct whatever action it deems necessary or proper to determine whether the respondent is so incapacitated, including the examination of the respondent by qualified medical experts designated by the Court. If, after reviewing the recommendation of the Board and upon due consideration of the matter, the Court concludes that the respondent is incapacitated from continuing to practice law, it shall enter an order transferring him to disability inactive status for an indefinite period and until the further order of the Court. Any pending disciplinary proceedings against the respondent shall be held in abeyance.

The Board shall provide for such notice to the respondent of proceedings in the matter as it deems proper and advisable. The respondent must be represented by counsel. If the respondent is not represented by counsel of his own choosing, the Court will appoint counsel to act for him and on his behalf.

tion of all funds held, commingled, or misappropriated by him. The Board concluded that restitution was not a defense to the misuse of clients' funds. The Board also concluded that Mr. Sullivan did not sustain his burden of establishing mental incompetence. At best, the testimony on this point only established an impairment of functioning that made choosing right from wrong "more difficult" for Mr. Sullivan. It did not evidence an inability to function as contemplated by Board Rule 20(g).

## II.

Mr. Sullivan contends that the Board erred in concluding that he had failed to meet his burden of proof under Rule 20(g). Specifically, he maintains that it was error for the Board to apply the standards for criminal insanity found in 11 *Del.C.* § 401 [3] to determine whether he was mentally incompetent under the Rule. He argues that the Board should have applied the definition of mental incompetence found in the Maryland Rules on Discipline and Inactive Status of Attorneys:

> Unable to render adequate legal service by reason of mental ... illness or infirmity ...

Md.Ann.Code Rule BV1.(i) (1987).

The Board, however, did not expressly adopt any standard for mental incom-

petence. The Final Report suggests merely that mental incompetence, under the complete defense provision of Rule 20(g), must mean an inability to function. The proof offered in this case only established an impairment of functioning which made choosing right from wrong more difficult. The evidence supports the Board's conclusion that Mr. Sullivan had the ability to choose right from wrong. Given the misconduct here, involving repeated acts of dishonesty, we consider the Board's analysis of Mr. Sullivan's ability to function to be a proper application of the standard under Board Rule 20(g).

Mr. Sullivan also contends that the Board erred in refusing to place him on disability inactive status under Board Rule 20(c). The Board concluded that such a disposition on this record was wholly inappropriate. We agree.

## III.

Mr. Sullivan's numerous instances of misconduct have shown that he is unfit to practice his profession. In viewing his conduct, the Board concluded that he violated seven separate provisions of the Disciplinary Rules a total of twelve times.[4] The commingling and misappropriation of

3. 11 *Del.C.* § 401 provides:
(a) In any prosecution for an offense, it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness or mental defect, the accused lacked substantial capacity to appreciate the wrongfulness of his conduct. If the defendant prevails in establishing the affirmative defense provided in this subsection, the trier of fact shall return a verdict of "not guilty by reason of insanity."
(b) Where the trier of fact determines that, at the time of the conduct charged, a defendant suffered from a psychiatric disorder which substantially disturbed such person's thinking, feeling or behavior and/or that such psychiatric disorder left such person with insufficient willpower to choose whether he would do the act or refrain from doing it, although physically capable, the trier of fact shall return a verdict of "guilty, but mentally ill."
(c) It shall not be a defense under this section if the alleged insanity or mental illness was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor, any drug or other mentally-debilitating

substance, or any combination thereof, unless such substance was prescribed for the defendant by a licensed health care practitioner and was used in accordance with the directions of such prescription. As used in this chapter, the terms "insanity" or "mental illness" do not include an abnormality manifested only by repeated criminal or other nonsocial conduct.

4. On September 12, 1985, this Court ordered that the Delaware Lawyers' Code of Professional Responsibility be superseded, effective October 1, 1985, and adopted the Delaware Lawyer's Rules of Professional Conduct as the standard governing the conduct of members of the Bar. Mr. Sullivan's violations occurred prior to the effective date of the new Rules of Professional Conduct, and were examined under the former Code. Mr. Sullivan's false representations before this Court during the *Honaker* case in July, 1984, and his false testimony during the December, 1984 hearing were held violative of D.R. 1–102(A)(4), which provided: "A lawyer shall not engage in conduct involving dishonesty, ... deceit, or misrepresentation," and D.R. 1–102(A)(5) which provided: "A lawyer shall not

clients' funds by a lawyer have been considered sufficient grounds for disbarment by this Court. *See, In re Clark,* Del.Supr., 250 A.2d 505, 506 (1969); *Matter of England,* Del.Supr., 421 A.2d 885, 886–87 (1980). Here, Mr. Sullivan has compounded his misconduct by filing false certifications that he was in compliance with the disciplinary rules regarding the segregation of clients' funds, and by falsely testifying to this. As the Supreme Court of New Hampshire has stated when faced with similar misconduct:

> Inattention and negligence in handling matters entrusted to an attorney by clients, and the resort to misleading statements to cover up these deficiencies to the detriment of clients do not measure up to the standards demanded of members of the bar of this State ... Misappropriation of clients' funds is a serious error which in and of itself justified disbarment. Falsely representing that state of affairs under oath is reprehensible ...

*Eshleman's Case,* N.H.Supr., 126 N.H. 1, 489 A.2d 571, 573–74 (1985).

██ The Supreme Court of California has stated that fraudulent misrepresentations to the State Bar and before the Supreme Court may constitute a "greater offense" than misappropriation. *Worth v. State Bar of California,* Cal.Supr., 22 Cal.3d 707, 150 Cal.Rptr. 273, 276, 586 P.2d 588, 590 (1978). *Cain v. State Bar of California,* Cal.Supr., 25 Cal.3d 956, 160 Cal.Rptr. 362, 365, 603 P.2d 464, 467 (1979). This Court has also taken a stern view of misconduct involving false representations before it:

> When there can be no reliance upon the word or oath of a party, he is, manifestly, disqualified, and, when such fact satisfactorily appears, the court not only have the power, but it is their duty to strike the party from the role of attorneys.

*In re Bennethum,* Del.Supr., 161 A.2d 229, 235 *reh'g denied,* 162 A.2d 429 (1960) (quoting *In re Percy,* N.Y.Ct.App., 36 N.Y. 651 (1867)). *See also, In re Green,* Del.Supr., 464 A.2d 881, 885 (1983); *Kosseff v. Board of Bar Examiners,* Del.Supr., 475 A.2d 349, 353 (1984).

Other courts have held that false testimony alone, absent other misconduct, warrants disbarment. *See, e.g., People v. McMichael,* Colo.Supr., 199 Colo. 433, 609 P.2d 633, 634 (1980). The neglect of legal matters, similar to that shown by Mr. Sullivan, taken alone, warranted disbarment in *Matter of McKenna,* Ind.Supr., 422 N.E.2d 287, 289 (1981):

engage in conduct that is prejudicial to the administration of justice." The false representations during the *Honaker* case were also seen to have violated D.R. 7–102(A)(5), which provided: "In his representation of a client, a lawyer shall not knowingly make a false statement of law or fact."

Mr. Sullivan's commingling of clients' funds with his own, his failure to keep complete records of funds deposited by clients to pay obligations, and his failure to keep adequate records of cash receipts or disbursements, were held to have violated D.R. 9–102(A) and its Interpretive Guideline No. 2, and D.R. 9–102(B)(3). D.R. 9–102(A) provided:

"All funds of a client paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the State in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein ..."

Interpretive Guidelines No. 2 provided that a lawyer was required:

"To maintain on a current basis books and records, which establish his compliance with D.R. 9–102 and which shall be preserved for at least five years following the completion of the year to which they relate or as to fiduciary trust records, five years following the completion of that fiduciary obligation."

D.R. 9–102(B)(3) provided:

"A lawyer shall maintain records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his clients regarding them."

D.R. 9–102(B)(4) provided:

"A lawyer shall promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive."

Finally, Mr. Sullivan's failure to record numerous deeds, mortgages, and other documents; and his failure to pay clients' obligations from funds given to him for these purposes, was held violative of D.R. 6–101(A)(3), which provided: "A lawyer shall not neglect a legal matter entrusted to him."

Respondent's misconduct relates to uncomplicated, routine matters which can and should be expeditiously accomplished by any attorney. A client should be able to anticipate prompt resolution of legal questions of this nature. Respondent's conduct demonstrates that, for whatever reason, he is not capable of handling the simplest of legal matters.

In view of these considerations, this Court is forced to conclude that in order to protect an unsuspecting public from conduct of this nature and in order to preserve the integrity of the profession, the strongest sanction available should be imposed.

Thus, when viewed alone, many of Mr. Sullivan's acts of misconduct would justify disbarment. When they are viewed together, this Court can reach no other conclusion. In performance of our duty to protect the public from a lawyer who has shown himself unfit to practice his profession, we have no alternative but to impose this sanction.

Disbarment is not an act of punishment. Rather, it is for the protection of the public. Since the focus is not on the lawyer, but instead on the danger to the public, Mr. Sullivan's mental condition is not a mitigating factor here.[5] *Office of Disciplinary Counsel v. Keller*, Pa.Supr., 509 Pa. 573, 506 A.2d 872, 877–78 (1986).

Under our exclusive jurisdiction over the Bar, the respondent, Arthur J. Sullivan, is hereby stricken from the Roll of Attorneys entitled to practice before the courts of this State.

---

**5.** The Board concluded that Mr. Sullivan's alleged mental condition could not be considered by it as a mitigating factor. We consider this error to the extent the Board held, as a legal proposition, that such a factor could not be considered in mitigation. In our opinion, the Board has discretion to take such mitigating factors into consideration in a proper case, although it correctly rejected that proposition here.