**In the Matter of John A. RICH, a Member of the Bar of the Supreme Court of Delaware.**

Supreme Court of Delaware.

Submitted: Dec. 20, 1988.

Decided: April 19, 1989.

Robert D. Goldberg, Biggs and Battaglia, Wilmington, for respondent John A. Rich.

L. Susan Faw, Disciplinary Counsel, Wilmington, for Bd. on Professional Responsibility.

Before CHRISTIE, C.J., MOORE and WALSH, JJ.

CHRISTIE, Chief Justice:

John A. Rich, a member of the Delaware Bar, is currently the subject of three petitions for discipline filed by the Board on

Professional Responsibility (the "Board"). Two of the petitions involve losses or various forms of prejudice sustained by several clients which resulted from Rich's negligence and lack of diligence on their behalf. The third petition involves Rich's failure to file and pay his state taxes for the years 1981, 1982, 1984, and 1985. In addition, this Court has before it two citations for contempt against Rich for his failure to comply with direct orders from this Court.

Rich does not deny or dispute any of the factual findings of the Board. Rather Rich contends that personal and financial pressures rendered him mentally incompetent within the meaning of Board on Professional Responsibility Rule 20(g) during the time of the alleged violations. Therefore, he contends that he should not be disbarred. Rich also argues that in any event his psychological condition should be considered as a mitigating factor when determining the resolution of this matter.

## I.

 In this matter, "[o]ur scope of review of the Board's factual findings is limited to a determination of whether the record contains substantial evidence supporting the findings." *Matter of Lewis*, Del.Supr., 528 A.2d 1192, 1193 (1987). After reviewing the Board reports and the record, this Court concludes that the Board's findings are supported by substantial evidence. In light of the severity of Rich's failures, his disregard of court orders, and the harm suffered by clients, we rule that Rich must be disbarred.

## II.

Rich was admitted to the Delaware bar in 1963, whereupon he took a position with a law firm. In 1966, after approximately three years of practice, he left that firm and opened his own law office. Although he enjoyed the personal independence of a solo practice, he found it difficult to manage a one lawyer office. He had a difficulty charging clients for his services, and he was not successful in collecting from clients who owed him money. Rich also appears to have been reluctant to take on lucrative referral work. As a result, his income from private practice was never more than modest, and he regularly supplemented his income by acting as an attorney for the General Assembly.

Rich was in financial trouble throughout the 1970s. However, he chose not to give up his own practice and join a firm. Rich stated that he felt that if he gave up his private practice he would be perceived as a failure, even though it appeared that such a move would provide a more stable income.

When he was no longer able to earn an adequate income, Rich stopped paying his state and federal income taxes. In 1977 or 1978, the IRS attached his wife's wages because of the tax delinquencies from prior years. By 1979, Rich had paid his federal taxes up to date and had made payments toward the delinquent taxes owed the State.

Late in 1980, Rich and his wife separated, due in large part to financial difficulties. They were divorced in 1981. Shortly after the divorce, Rich's four sons came to live with him, and he assumed the entire burden of their support. Rich, feeling the need to spend time with his children, resigned his position as counsel to the General Assembly leaving his family with one source of income and rapidly depleting any meager savings he had.

Rich's financial and personal difficulties eventually appear to have had an impact on his professional abilities. Disciplinary Counsel's first petition against Rich arose out of Rich's negligent handling of a child custody case. A hearing on this matter was held by the Board on October 17, 1985.[1]

In a report, filed with this Court on September 22, 1986, the Board concluded that

1. The Delaware Lawyers' Rules of Professional Conduct replaced the Delaware Lawyer's Code of Professional Responsibility by order of this Court effective October 1, 1985. Since the viola-

Rich repeatedly misrepresented facts to his client resulting in substantial delay of her action. The Board found this conduct to be in violation of D.R. 1–102(A)(4).[2] The Board also found that Rich neglected his client's interests for substantial periods of time in violation of D.R. 6–101(A)(3).[3] In addition, the Board found that Rich's conduct amounted to an intentional avoidance of his obligation to pursue his client's lawful interests in violation of D.R. 7–101(A)(1).[4]

For this misconduct, the Board recommended a public reprimand and two years of probation.[5] In connection with the probation, Rich was directed to file periodic reports with the Board identifying each legal matter he was working on and its status. By order dated October 29, 1986, the Supreme Court approved the Board's report and directed Rich to comply with the terms of the probation.

Meanwhile in 1984, Rich's financial problems had finally became so severe that he was forced to close his private office. He then obtained a position in a small firm of lawyers.[6] However, his financial problems persisted. Eventually, Rich's wages were garnished to pay the IRS liens for delinquent taxes. This reduced Rich's take-home pay to $125 per week. Later, other attachments left him with a weekly take-home pay of only $75.

On November 12, 1986, the Disciplinary Counsel moved for reargument on the sanction imposed by this Court in the disciplinary matter mentioned above, and this Court granted the motion. While the reargument was pending, Rich was ordered to abide by the existing terms of probation.

Although Rich was granted several extensions, he failed to file the reports he was required to file with a designee of the Professional Guidance Committee of the Delaware State Bar Association (the "Designee"). On December 5, 1986, this Court ordered Rich to submit his delinquent reports no later than December 15, 1986. Again, Rich failed to do so.

Thereafter, this Court entered an order directing Rich to appear and to show cause why he should not be held in contempt and immediately suspended from the practice of law for disobeying the Court's orders.

Rich appeared on December 19 at the hearing without counsel. During the hearing he admitted he had violated the Court's orders, and he tendered his resignation with prejudice. In connection with his tender of resignation, he represented that he did so voluntarily and with full understanding of the professional ramifications which would result if the Court were to accept his resignation. He further represented that he would not apply for admission to the bar of any other jurisdiction and that he would notify his firm of this development. Because by then other complaints were pending before the Board, the Disciplinary Counsel opposed the acceptance of Rich's resignation. This Court found Rich in contempt of its previous orders and sus-

---

tions in this matter occurred prior to the effective date of the Rules of Professional Conduct, Rich's actions in that petition are examined under the former Code of Professional Responsibility. The remaining charges against Rich will be considered under the Rules of Professional Conduct.

**2.** D.R. 1–102(A)(4) provided, that "A lawyer shall not: (4) [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

**3.** D.R. 6–101(A)(3) provided that "A lawyer shall not: (3) [n]eglect a legal matter entrusted to him."

**4.** D.R. 7–101(A)(1) provided, in pertinent part, that:

A lawyer shall not intentionally: (1) [f]ail to seek the lawful objectives of his client through reasonably available means permitted by law. . . .

**5.** A malpractice action was brought against Rich in connection with his dilatory representation in this matter. Through an out of court settlement, Rich agreed to pay $35,000 plus interest at a rate of 17% per year as well as attorney's fees. The settlement was to be paid in installments of $200 per month.

**6.** This firm placed new pressures on Rich, who was faced with associated practice for the first time in approximately 18 years.

pended him from the practice of law. The tendered resignation was taken under advisement.

Three days later, on December 22, 1986, the Court was advised by the Disciplinary Counsel that even though Rich had been suspended at the December 19 hearing, he had since appeared in Family Court on behalf of a client. Additionally, contrary to his representation to the Court, he had failed to inform his firm of his suspension.

A second hearing was held on December 23, 1986. At that time Rich was found to be in violation of the Court order dated December 19, 1986, and he was held in contempt. On that same day, the Board filed a report concerning Rich's failure to file income tax returns for years 1981, 1982, 1984, and 1985. The Board also found that Rich had willfully failed to pay income taxes owed from 1979 and 1983.

On March 30, 1987, Rich filed a report prepared by a psychiatrist, and again tendered his resignation to this Court. By order dated May 19, 1987, this Court formally declined to accept the tendered resignation and directed an investigation of all pending complaints against Rich.

The Disciplinary Counsel's investigation resulted in the filing of a twenty-three count petition arising out of nine separate cases which were handled by Rich during his recent employment at the law firm. On November 24, 1987, the Board held a hearing on this petition. The Board's final report was filed with this Court on July 27, 1988.

The Board concluded that Rich had violated numerous Rules of Professional Conduct, namely:

(1) Rich failed to respond to four separate letters from the Disciplinary Counsel in violation of Rule 8.1(b).[7]

(2) Rich failed to provide competent representation in his handing of matters for three clients in violation of Rule 1.1.[8]

(3) Rich failed to act with reasonable diligence and promptness in six separate cases in violation of Rule 1.3.[9]

(4) Rich failed to refund money advanced to him in three separate cases for which no legal service was rendered in violation of Rule 1.16(d).[10]

(5) Rich wrongfully converted funds of three of his clients to his own personal use in violation of Rule 8.4(c).[11]

(6) Rich failed to keep three of his clients informed of the status of their matters in violation of Rule 1.4(a).[12]

### III.

Rich contends that he was "mentally incompetent" during the time he committed

---

**7.** Rule 8.1(b) of The Delaware Lawyers' Rules of Professional Conduct provides that a lawyer, in connection with a disciplinary matter, shall not:

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admission or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

**8.** Rule 1.1 of The Delaware Lawyers' Rules of Professional Conduct provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**9.** Rule 1.3 of The Delaware Lawyers' Rules of Professional Conduct provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

**10.** Rule 1.16(d) of The Delaware Lawyers' Rules of Professional Conduct provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

**11.** Rule 8.4(c) of The Delaware Lawyers' Rules of Professional Conduct provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

**12.** Rule 1.4(a) of The Delaware Lawyers' Rules of Professional Conduct provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

violations of the Rules of Professional Responsibility and the Rules of Professional Conduct which resulted in harm to his former clients.[13] Rich presented evidence on the issue of his mental competency for the first time before this Court.[14] Rich contends that this is proper under Board Rule 9(e).[15] Rich's approach here is incorrect because Board Rule 9(e) provides that the Supreme Court's review of matters of this type shall be "pursuant to the rules governing civil appeals." Bd. Prof. Resp. R. 9(e). This issue was not "fairly presented to the trial court [the Board]." Supr. Ct. R. 8.[16] However, this Court may consider an issue "where the interests of justice so require." *Id.* Since the Board directed appellant to submit this matter directly to this Court, the Court will consider his defense at this time.[17]

## IV.

Under Board Rule 20(g) "[m]ental incompetency is a complete defense to conduct of a lawyer which would otherwise warrant disciplinary action", for any act which was the result of or a consequence of the incompetency. Bd. Prof. Resp. R. 20(g)(1).

The term "mental incompetency" as used in the Board Rules is not defined, and there is no history of the section which casts light on the term's precise meaning. However, the rule allocates to the respondent the burden of establishing the defense "in all its aspects." *Id.* In order to satisfy this burden, the respondent must establish his defense by clear and convincing evidence. Bd. Prof. Resp. R. 15(c).[18]

In support of his claimed mental incompetency, Rich offers a single six page re-

---

**13.** Board on Professional Responsibility Rule 20(g) states: *Mental Incompetency as a Defense to Misconduct.*

(1) Mental incompetency is a complete defense to conduct of a lawyer which would otherwise warrant disciplinary action:

a. If such conduct was the result or consequence of mental incompetency, and

b. If the mental incompetency which was responsible for such conduct has been cured so completely that there is no reasonable basis to believe there will be a recurrence of the condition.

The burden of proof of this defense, in all its aspects, is upon the respondent.

(2) If the respondent is able to sustain the burden of proof as to his mental incompetency at the time of the conduct of which complaint is made, but is unable to prove recovery to the extent indicated in item b. in subdivision (1) of this paragraph and the Board has reason to believe that such recovery is possible, the Board will recommend to the Court that respondent be suspended until such time as he can prove such recovery; otherwise the Board shall recommend his transfer to disability inactive status.

(3) Any respondent defending on the grounds of mental incompetency shall be suspended immediately until and unless he shall sustain the burden of proof that he has been cured so completely that there is no reasonable basis to believe there will be a recurrence of the condition.

**14.** Ostensibly, the issue was "raised" before the Board at a disciplinary hearing held on November 24, 1987. At that time Rich indicated that

he would be asserting this defense but, due to the expense of expert testimony, he did not have his expert present. Due to the multi-petition nature of the action, the Board directed Rich to submit evidence on his claimed incompetency directly to this Court, therefore, this issue was not considered by the Board.

**15.** Generally, the procedure before the Board is outlined in Board on Professional Responsibility Rule 9. Rule 9(e) provides:

*(e) Review by the Court.* The respondent may file objections to the report within 20 days from the date of service. The Board's dismissal of a complaint, or imposition of probation or reprimand to which no objections shall be filed, shall be final. All other matters shall be determined by the Court. The review will be pursuant to the rules governing civil appeals in the Supreme Court, with the respondent deemed the appellant.

**16.** Supreme Court Rule 8 provides:

Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.

**17.** In these matters the correct procedure is for the Board to direct presentation of evidence to it and to make factual findings.

**18.** Rule 15(c) provides:

*(c) Standard of Proof.* Formal charges of misconduct, petitions for reinstatement, and petitions for transfer to and from disability inac-

port from a psychiatrist who examined Rich on three separate occasions for a total of three hours and forty-five minutes.[19] In his report the psychiatrist cited two personality traits, exaggerated to maladaptive proportions, as a basis for Rich's professional problems. Specifically, the psychiatrist cited Rich's "lack of appropriate assertiveness" and "extreme sensitivity to embarrassment, particularly when revealing personal failures" as the underlying problems in Rich's career and in his failure to seek professional help sooner.

The doctor expressed the opinion that Rich suffers from two psychiatric disorders. The first, diagnosed as "Passive–Aggressive Personality Disorder" is characterized by "a resistance to the demands for adequate performance in social or occupational functioning." The second disorder, diagnosed as "Dysthymic Disorder," is a depressive syndrome that lasts "at least two years, and [is] characterized by a prominent depressed mood or a marked loss of interest or pleasure in all or almost all of the usual activities and pastimes."

The report indicates that although Rich suffered from these two disorders, his cognitive functions and judgment were intact, and hence he was "able to appreciate the wrongfulness of his conduct" with respect to his failure to file income tax forms. The report goes on to state that the mental disorders from which Rich was suffering "substantially disturbed his thinking, feeling and behavior so as to limit his choices" when dealing with authority figures. However, the psychiatrist says that Rich's disorders are not of "such magnitude that he would be totally incompetent to practice law." Additionally, he states that Rich is able to understand the nature of the disciplinary charges against him.

tive status shall be established by clear and convincing evidence.

**19.** The report addresses only Rich's conduct in connection with his failure to file tax returns and to comply with Court orders. No mention is made of Rich's wrongful behavior towards his clients. Therefore, this Court has no evidence specifically directed toward Rich's misconduct in client relationships.

■ This report certainly indicates that Rich may very well be suffering from psychiatric disorders. However, such disorders alone do not constitute a defense to charges of misconduct under Board Rule 20(g). Instead, the mental problems in question must be causally connected to the lawyer's conduct. Bd. Prof. Resp. R. 20(g)(1)a. Moreover, the rule provides that the incompetency must be "cured so completely that there is no reasonable basis to believe there will be a recurrence of the condition," Bd. Prof. Resp. R. 20(g)(1)b, or, if Rich is unable to prove that he is recovered at the time of the hearing, the Board may recommend suspension if it "has reason to believe that such recovery is possible". Bd. Prof. Resp. R. 20(g)(2).

In this case, as in the case of *Matter of Sullivan*, Del.Supr., 530 A.2d 1115 (1987), a member of the bar has been found to have committed repeated acts of disobedience and dishonesty. This misconduct, aside from damaging the stature of the profession, has injured several people. We find that Rich's psychiatric problems are not such as to support a defense of mental incompetence. We find that Rich has not met his burden of proof under Board Rule 15(c) and that his defense of incompetency fails under Board Rule 20(g).

## V.

■ Rich argues, in the alternative, that the difficulties he was having in his personal life and his dire financial problems are mitigating circumstances which this Court ought to take into account when meting out an appropriate sanction.[20] In support of this contention, Rich portrays himself as a hapless victim of mental disorders as well as personal and financial hardships.

**20.** Board on Professional Responsibility Rule 8, which provides authority sanction lawyers for misconduct, permits the consideration of mitigating or aggravating circumstances. Specifically Rule 8(c) provides that "[m]itigating or aggravating circumstances which affect the nature or degree of discipline to be imposed in a matter shall be fully set forth in the opinion disposing of the matter." Bd. Prof. Resp. R. 8(c).

Rich urges this Court to treat his situation as comparable to that of *Attorney Griev. Comm'n v. Flynn*, 283 Md. 41, 387 A.2d 775 (1978). In that case a lawyer with severe personal problems and an addiction to alcohol wrongfully converted a client's funds. Instead of ordering the lawyer disbarred, the Maryland Court of Appeals imposed an indefinite suspension which could only be lifted "upon a showing, by clear and convincing evidence amounting to a moral certainty, that the malady ha[s] been removed and rehabilitation is complete so that the illegal and improper acts will never be repeated." *Id.* 387 A.2d at 778. We find the *Flynn* case, involving only a single instance of wrongful conversion of one client's funds, factually distinct from this case due to Rich's numerous violations.

Rich also relies on the case of *Matter of Reed*, Del.Supr., 429 A.2d 987 (1981), where this Court declined to disbar a lawyer with a history of ethical violations. Although, technically, Reed was not disbarred, an order was entered striking his name from the role of attorneys of this Court. *Id.* at 994.

Rich further relies on the case of *Matter of Lewis*, Del.Supr., 528 A.2d 1192 (1987), as authority for the proposition that financial strain may constitute a mitigating factor when deciding the sanction to be imposed.[21] Although in the *Lewis* case the Court considered mitigating factors, it nonetheless suspended the lawyer for three years because of the two instances of professional misconduct. In the present case, the Court likewise considered the mitigating factors advanced by Rich, however, Rich's acts of misconduct are more numerous and severe. Rich has been found to have permanently injured several clients. Furthermore, Rich disregarded direct orders of this Court, and failed to comply with both state and federal law regarding filing and payment of taxes. Therefore,

the *Lewis* case is distinguishable on the facts.

Finally, Rich relies on the case of *In re Willcher*, D.C., 404 A.2d 185 (1979) as support for his contention that the sanction of disbarment is too severe. In the *Willcher* case a lawyer was found to have violated the Rules Governing the Bar of the District of Columbia in eleven separate matters. *Id.* at 186–88. After finding that there was a "strong likelihood" that Willcher was suffering from a severe form of depression which resulted in or "at least exacerbated" his misconduct, the District of Columbia Court of Appeals suspended Willcher from the practice of law for five years. *Id.* at 189.

The bar is required to serve the interests of the public. In order to assure that the services rendered will be fair and competent the bar must be ever on its guard against instances such as this. Moreover, "[d]isbarment is not an act of punishment. Rather, it is for the protection of the public. Since the focus is not on the lawyer, but instead on the danger to the public ... mental condition is not a mitigating factor here." *Matter of Sullivan*, 530 A.2d at 1119. In addition, we find Rich's disobedience of orders of this Court indicates a lack of regard for the profession which he has damaged by the poor service he has rendered to the public. We decline, therefore, to follow the ruling in the *Willcher* case.

Rich's violations are numerous, diverse, and serious. His lack of diligence has severely handicapped the causes of actions of some of his former clients. This Court considers the fact that a lawyer has committed multiple violations of the Rules of Professional Responsibility as a factor in determining an appropriate sanction. In our opinion such conduct constitutes an aggravating circumstance under Board

---

**21.** In the *Lewis* case a lawyer was in the process of closing his floundering practice here in Delaware and moving to another State. Concurrently, an auditor for the CSTF attempted to schedule an audit of Lewis' books. Lewis avoided the auditor and did not respond to letters and calls even after the Board became involved. *Id.* at 1193–94. Lewis also neglected the interests of one client. *Id.* at 1195.

Rule 8.[22]

The mitigating factors advanced by Rich have been duly considered by this Court, but they do not outweigh the aggravating factors. Therefore, the respondent, John A. Rich, is disbarred, and his name is stricken from the Roll of Attorneys entitled to practice before the courts of this State.

22. See Bd. Prof. Resp. R. 8, *supra,* n. 20; *Matter* *of Sullivan,* 530 A.2d at 1119.