**In the Matter of John R. CHRISTIE, A Member of the Bar of the Supreme Court of Delaware.**

Supreme Court of Delaware.

Submitted: Jan. 23, 1990.
Decided: April 16, 1990.

L. Susan Faw, Disciplinary Counsel for Bd. on Professional Responsibility, Wilmington.

John M. Willard, Wilmington, for John R. Christie.

Before HORSEY, MOORE, WALSH and HOLLAND, JJ., and ALLEN Chancellor (sitting by designation pursuant to Del. Const. art. IV, § 12) (constituting the Court en banc).

PER CURIAM.

This is an attorney Disciplinary proceeding. It has been referred to the Court by its Board on Professional Responsibility (the "Board"). The conduct which gave rise to this disciplinary proceeding occurred over a ten day period between January 22 and February 1, 1987. During this time, the respondent, John R. Christie ("Christie") invited two teenage male minors to his apartment. Christie provided the minors with alcoholic beverages, showed them "X-rated" video tapes, and masturbated in their presence. According to Christie, he was introducing "the boys to sex and alcohol in moderation."

Christie was arrested as a result of his interaction with these male minors. The record reflects that the Delaware Department of Justice charged Christie with every crime that it had competent evidence to support. Christie entered pleas of guilty, as charged, to thirteen criminal misdemeanors: sexual harassment (4 counts); indecent exposure (3 counts); endangering the welfare of a child (3 counts); and unlawfully dealing with a child (3 counts).

The Board has found that Christie, by committing criminal acts in violation of 11 *Del.C.* §§ 763, 765, 1102 and 1106, engaged in a course of conduct which adversely reflects on his fitness as a lawyer and forms the basis for finding him in violation of Rule 8.4(b) of the Rules of Professional Conduct. Christie accepts the Board's findings. Disciplinary Counsel also accepts those findings. Therefore, the issue to be

decided by this Court is the appropriate sanction for Christie's professional misconduct.

## I

This matter was originally heard by the Board on June 17, 1988. Christie submitted a conditional admission to the charges of professional misconduct in exchange for a two-year suspension, pursuant to what was then Rule 18 of the Rules of the Board on Professional Responsibility. Evidence of aggravating and mitigating circumstances was presented to the Board. After the hearing, in a Final Report dated July 19, 1988, the Board recommended that Christie's conditional admission be accepted by this Court.

By Order dated October 17, 1988, this Court rejected Christie's conditional admission and remanded the case to the Board. Christie waived his right to a new hearing. The Board reconvened and submitted a Report Upon Remand dated December 7, 1988. The report set forth findings of fact, as well as findings concerning aggravating and mitigating circumstances. However, in this report the Board made no recommendation concerning sanctions.

## II

The Board's findings of fact with respect to the underlying charges of professional misconduct, as set forth in its first two reports are, in pertinent part, as follows:

1. John R. Christie is a member of the Bar of the Supreme Court of Delaware, having been admitted to practice on October 31, 1986.

2. Between January 22, 1987, and February 1, 1987, Christie, did suggest, importune or attempt to induce two male minors to have sexual contact with him; did intentionally expose his genitals knowing he was likely to cause the male minors affront or alarm; did provide the male minors with alcoholic beverages, which resulted in the male minors become [sic] delinquent children; and did knowingly permit the male minors to enter and remain in his dwelling, a place where unlawful sexual activity was conducted.

3. On or about February 10, 1987, Christie was notified of a criminal investigation into his activities and he contacted his attorney. Upon discussing the nature of the investigation with his attorney, Christie then gave to the police a full and complete confession as to his activities. Approximately one month later, he was admitted into a program at Johns Hopkins University for sexual offenders which included three weeks as an in-patient for treatment of possible sexual disorders or deviate sexual desires or behaviors and out-patient therapy thereafter. The out-patient therapy was once a week every week for approximately two and one-half hours per session of group therapy until the end of 1987. Thereafter, Christie attended therapy once every two weeks.

4. An investigation by the Department of Justice ensued. Upon arrest, Christie notified Disciplinary Counsel of his arrest, the nature of the charges against him, and agreed to be cooperative with her. Further, Christie was then in the employ of the Superior Court of the State of Delaware as a law clerk and he immediately tendered his resignation from the Superior Court. From that point forward, Christie refrained from practicing law or otherwise involving himself in the legal profession except as a paralegal doing legal research and investigative work.

5. On February 22, 1988, Christie entered into a plea agreement with the State of Delaware whereby he entered pleas of guilty to adult informations alleging four counts of Sexual Harassment, three counts of Indecent Exposure in the First Degree, three counts of Endangering the Welfare of a Child and three counts of Unlawfully Dealing with a Child. Said plea bargain also includes the commitment of Christie that in the event he is disbarred, suspended, or otherwise prohibited from the practice of law, that he agrees not to apply for reinstatement for a period of three years from the date of his suspension from

Superior Court. That is, no sooner than March 1, 1990. Further, Christie agreed not to apply for membership to any other bar for a period of three years during a suspension, or if disbarred, for a period of five years.

6. On May 31, 1988, a Judge of the Family Court of the State of Delaware, in and for New Castle County, sentenced Christie to five years supervised probation. As a condition of that probation, Christie was to continue his therapeutic programs, engage in 150 hours of community service, pay the evaluation and therapeutic expenses of the minor male children, and to have no contact with the minor male children.

In aggravation of the instances of professional misconduct, the Board found:

The allegations in this case, as admitted by Christie, charge a pattern of repeated sexual misconduct involving male minors that seriously reflect on Christie's ability to maintain his personal integrity. While Christie's misconduct did not involve professional duties to the public, to the legal system, or to the profession, his failure to maintain his personal integrity can neither be condoned nor tolerated and severe discipline must be imposed.

In mitigation of the instances of professional misconduct, the Board found:

In considering the circumstances or factors that may mitigate the degree of discipline to be imposed upon Christie, the Board found that it was significant that he sought professional help, including residential patient treatment and continuing therapy soon after the events referred to above. Christie has further been contrite and remorseful in his conduct and has cooperated with the Department of Justice, the Disciplinary Counsel, and has freely admitted his violations of the law and the Rules of Professional Conduct.

Upon the happening of the events referred to above, Christie resigned his employment with the Superior Court and imposed upon himself a suspension from the practice of law which was appropriate under the circumstances. Under the plea agreement, Christie has agreed not to seek reinstatement to practice law prior to March 1, 1990, or, in the case of disbarment, for a period of five years.

### III

On May 3, 1989, this Court again remanded the matter to the Board for further proceedings and identified the following areas for inquiry by the Board:

1. The enlargement of the record on the subject of pedophilia, its diagnosis, control, and the rate of recidivism associated with it;

2. A factual dispute between the Respondent and the victims on whether or not acts of fellatio did or did not take place; and

3. The effect (psychological, emotional or otherwise) upon the victims of the Respondent's conduct.

On July 24, 1989, a Panel of the Board convened to consider the matters to be brought before it in accordance with the Order of this Court dated May 3, 1989.[1] The report of the Board following its second hearing upon remand, stated, in part:

In order to further enlighten the Panel and the Supreme Court on the subject matter of pedophilia, its diagnosis, control, and the rate of recidivism associated with it, the Respondent offered the testimony of Fred S. Berlin, M.D., PhD., a psychiatrist who is the Director of the Sexual Disorders Clinic at Johns Hopkins Hospital and is attending the Respondent. Disciplinary Counsel called as her witness Park Elliott Dietz, M.D., M.P.H., PhD., a forensic psychiatrist who consults with attorneys, courts and law enforcement agencies in the fields of criminal, personal injury, and psychiatric malpractice cases.

. . . . .

In assessing recidivism as it applies to nonexclusive or regressed homosexual pe-

---

1. Appearing and testifying on behalf of Christie were Nancy Rambo, Joanne Kassees, Jay G. Weisberg, M.D., Fred S. Berlin, M.D., and Christie himself. Appearing and testifying on behalf of Disciplinary Counsel was Park E. Dietz, M.D.

dophilia, Dr. Berlin described his efforts of quantifying the recidivism rate, as the result of follow-up with 158 people, and his efforts indicated a success rate of 90% in that there was no rearrest indicated over a three to four year period.

. . . In attempting to define whether or not homosexual pedophilia was a result of moral deficiency, Berlin indicated that in one sense homosexual pedophilia is not the person's fault in that the cravings or temptations are outside the persons control. However, Berlin did not exclude ethical or moral concerns in evaluating the behavior because, in his opinion, it is the patient's responsibility to control his cravings or temptations. Generally, sexual disorders are not peculiar to any race, nationality or religion, nor are they limited to men.

Dr. Berlin testified that he is the treating psychiatrist for Mr. Christie and described the in-patient and out-patient treatment that Christie has undergone. Dr. Berlin indicated that Christie was not being treated with Depo–Provera for his sexual disorder and that there was no history of prior child abuse that would have indicated a possibility for episodes such as is before the Panel.

Dr. Berlin offered his opinion about what caused the offenses. In his opinion, there was an appalling lack of judgment on the part of Christie, that he had denied his homosexuality, and that he had thought that his victims were miniature adults. Berlin offered that sexual motivations were not as strong in Christie as was the motivation to return to the practice of law and that significant progress had been made in the treatment of Christie.

In terms of being a high risk recidivist, Berlin did not conclude that Christie was a high risk repeater. Likewise, Dr. Berlin was of the opinion that Christie was not high risk as a threat to childrens sexual exploitation.

However, insofar as minor clients are concerned, Dr. Berlin was of the opinion that Christie was at high risk and that constraints or chaperones were appropriate to protect both Christie and his minor clients. Dr. Berlin was of the opinion that Christie could practice law subject to such constraints, and that, if Christie were denied the opportunity to practice law, Christie would be devastated.

Disciplinary Counsel introduced the testimony of Dr. Dietz, who described for the Panel his background in psychiatry and his experience and knowledge of the field of sexual disorders relating to homosexual pedophiles.

. . . Dr. Dietz compared the estimation of recidivism, as articulated by Dr. Berlin, with the body of knowledge relating to recidivism among homosexual pedophiles. Allowing for the 10% risk figure that Dr. Berlin gave and for reoffenders who were not rearrested, Dr. Dietz concluded that Dr. Berlin's estimation fell within the range of detected reoffense of 11% to 40%. In estimating these matters, Dr. Dietz indicated that there was evidence that a sizeable proportion of reoffenses were not detected and that the undetected reoffender proportion could range as high as 50%.

Being familiar with the matter of Mr. Christie, Dr. Dietz offered the opinion that, insofar as Christie is concerned, his potential for recidivism of a homosexual pedophile act was in the lowest risk group he could identify. An analysis of the underlying facts upon which he reached his conclusion are set forth in Transcript pages 210–17. Dr. Dietz, in considering whether or not Christie's condition would interfere with his ability to practice law, indicated that it would have an effect if he were caught or under suspicion for homosexual pedophilic conduct and that Christie should safeguard himself and his clients from this potential.

As a result of the foregoing testimony, the Panel finds that the Respondent, John R. Christie, suffers from a sexual disorder known as nonexclusive or regressed homosexual pedophilia. Further, the Panel finds that Christie has undertaken the treatment of this disorder through the Sexual Disorders Clinic at Johns Hopkins University and has been treated as an in-patient and

out-patient since early 1987. Further, the respondent has been treated for depression by Dr. Weisberg since early 1987.

The Panel finds that it is Dr. Berlin's opinion, based upon his experience and knowledge of this complex field of behavioral medicine and his knowledge of Christie, that the probability of recidivism insofar as it relates to the Respondent is approximately 10%. Further, the Panel finds that, in the opinion of Dr. Dietz, there is a divergence of opinion within the profession relating to recidivism and pedophilia, but, that Dr. Berlin's knowledge of the subject matter falls within the range of acceptable prevailing opinions on recidivism and pedophilia.

The Panel further finds that it is the opinion of Drs. Berlin and Dietz, that the prognosis for recidivism as it relates to the Respondent indicates that he is not a high risk to be a repeat offender, but rather is a low risk for recidivism.

. . . . .

■ The Supreme Court, in its Remand Order of May 3, 1989, found that the record on appeal was incomplete and inadequate for failure of the Panel to resolve a serious factual dispute between the Respondent and victims on whether or not an act or acts of fellatio did or did not take place. This dispute arises from the unsworn statement of the victim, James C., which appears at page 6 of the Presentence Investigation Report dated May 31, 1988, and which was submitted as Joint Exhibit 1. The statement of James C. asserts that the Respondent performed fellatio upon him at least twice during the same evening.

At the hearing upon remand, conducted on July 24, 1989, the Respondent specifically denied that any acts of fellatio or mutual masturbation took place between him and the victims.

. . . Further, during the course of the hearing, Ms. Faw reiterated her efforts to resolve this factual issue. In summary, Ms. Faw was able to communicate with the victim known as James R. and his mother. James R. never claimed that fellatio occurred between him and the Respondent and in his statement to Ms. Faw reiterated

that position. Further, James R. did not report observing any such activity between the Respondent and James C.

Insofar as James C. is concerned, Ms. Faw encountered difficulty in locating him and when she did find James C., was unable to interview him concerning acts of fellatio. In the case of both victims, neither James R. nor James C. would participate voluntarily in the disciplinary process or otherwise cooperate with Ms. Faw in her investigation. On May 17, 1989, Ms. Faw spoke with the mother of James R., and she advised that it was, in her opinion, detrimental to her son's interest to participate in disciplinary proceedings and by letter dated June 20, 1989, received by Disciplinary Counsel on July 27, 1989, John J. Dowling, counselor for James C., articulated his belief that it was not in the best interest of James C. to participate in disciplinary proceedings.

With this information before her, Disciplinary Counsel concluded that she was unable to present any evidence of an act or acts of fellatio upon the victims.

Thus, before the Panel for consideration was the hearsay statement of James C. contained in the Presentence Investigation and the sworn testimony of the Respondent, subject to cross-examination, that no acts of fellatio took place.

Pursuant to Rule 15 of the Rules of the Board on Professional Responsibility of the Supreme Court of Delaware, Disciplinary Counsel has the burden of proof in these proceedings and matters to be proven must be established by clear and convincing evidence.

There appearing upon the record no clear and convincing evidence that an act or acts of fellatio took place, the Panel finds that no act or acts of fellatio took place between the victims and the Respondent.

. . . . .

■ As recited in the foregoing section, Disciplinary Counsel diligently attempted to locate and interview the victims, James C. and James R., with respect to the effect of the Respondent's conduct on the victims. Disciplinary Counsel reported to the Panel

on three separate occasions her efforts to illicit this information and offered into the record her statement concerning her efforts, as well as Disciplinary Counsel's Exhibit 2. The mother of James R. concluded that further cooperation with Disciplinary Counsel and participation in the disciplinary process would be detrimental to her son's interest. The mother of James R. advised Disciplinary Counsel that she reached this conclusion after discussing the matter with one of her son's therapists. Separately, Mr. Dowling, the therapist for James C., concluded that there was no benefit to be derived from the participation of James C. in the disciplinary process and that, in his opinion, if James C. were to participate, he foresaw probable harm and disruption in his adjustment and that the proceedings were likely to be detrimental. Ms. Faw discussed these matters with the therapist and concluded that compelling the victims to testify would be detrimental to them, and therefore, did not do so.

Accordingly, the Panel makes no findings and reaches no conclusions with respect to the effect (psychological, emotional or otherwise) on the victims of Respondent's conduct.

### III

■ The Board concluded that Christie's conduct constituted a violation of Rule 8.4(b) of the Delaware Lawyers' Rules of Professional Conduct. That rule provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The Board found that Rule 8.4(b) reaches instances of sexual misconduct or sexual exploitation of a nature indicating that the lawyer is unworthy of the confidence reposed in him or her. *ABA/BNA Lawyers' Manual on Professional Conduct*, 101:304 (1985). Accordingly, the Board determined that Christie's misconduct should result in the imposition of discipline, even though that misconduct occurred outside of any attorney/client relationship. We agree.

■ The inherent and exclusive authority for disciplining attorneys rests with this Court. *In Re Green*, Del.Supr., 464 A.2d 881, 885 (1983). Although protection of the client is a primary purpose of disciplinary action, there are other important purposes to be served by lawyer discipline. *See Matter of Sullivan*, Del.Supr., 530 A.2d 1115, 1119 (1987); *In Re Draper*, Del. Supr., 317 A.2d 106 (1974). Disciplinary proceedings also serve to foster public confidence in the Bar, to preserve the integrity of the profession, and to deter other lawyers from similar misconduct. *Matter of Sullivan*, 530 A.2d at 1119.

■ As officers of the Court, members of the Bar are expected to respect and uphold the law. "[L]awyers who act illegally diminish the stature of the legal professional and reduce public confidence in the rule of law." *Standing Comm. on Discipline of the United States Dist. Court v. Ross*, 735 F.2d 1168, 1171 (9th Cir.1984). *See* C. Wolfram, *Modern Legal Ethics*, § 3.1 (1986). Accordingly, failure to maintain personal integrity, by engaging in criminal conduct, has resulted in the imposition of serious disciplinary sanctions by this Court. *See Matter of Sandbach*, Del.Supr., 546 A.2d 345 (1988) (wilful failure to file income tax returns for five years resulted in three year suspension, provided that respondent could petition for reinstatement in two years if he had completed 400 hours of community service); *In Re Sanders*, Del.Supr., 498 A.2d 148 (1985) (wilful failure to file income tax returns for three years resulted in three year suspension).

■ In the proceedings before this Court, no exceptions to any of the factual findings or legal conclusion of the Board were filed by Christie. Bd.Prof.Resp.R. 9(e). Nevertheless, we have made a careful and independent review of both the findings of fact and the conclusions of law that are set forth in each of the Board's reports. Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings. *Matter of Lewis*, Del.Supr., 528 A.2d 1192, 1193 (1987); *In re Kennedy*, Del.Supr., 472

A.2d 1317, 1326 (1984); *Matter of Reed,* Del.Supr., 429 A.2d 987, 991 (1981). We review the Board's conclusions of law *de novo. Matter of Berl,* Del.Supr., 540 A.2d 410, 413 (1988). We are satisfied that the record before us supports both the findings of fact and the conclusions of law made by the Board in this case. *Matter of Sullivan,* 530 A.2d at 1117; *Matter of Lewis,* 528 A.2d 1192; *In re Sanders,* 498 A.2d 148; *In re Frabizzio,* Del.Supr., 498 A.2d 1076 (1985). *See also In re Ryan,* Del. Supr., 498 A.2d 515 (1985).

## IV

In the proceedings before the Board and this Court, Christie has acknowledged that he is a member of the Bar who has failed to maintain his personal integrity by committing serious crimes. Christie has also acknowledged that, given the nature of his misconduct, "it is not difficult to determine that a term of suspension from the practice of law is necessary." However, Christie argues that there are several significant factors which distinguish his case from one in which disbarment would be required.

First, Christie argues that in those cases, in other jurisdictions, where attorneys have been disbarred for sexual misconduct, there has uniformly been an extra aggravating circumstance that is not present in his case. In two cases, for example, attorneys charged with sex offenses left the jurisdiction to avoid prosecution and were subsequently disbarred. *Cincinnati Bar Ass'n v. Lisner,* 65 Ohio St.2d 62, 417 N.E.2d 1381 (1981); *In re Heinze,* 233 Minn. 391, 47 N.W.2d 123 (1951). Several attorneys have been disbarred for sexual misconduct aggravated by lying about it either at criminal proceeding or at the disciplinary hearing. *Green v. State,* 589 S.W.2d 160 (Tex.Civ.App.1979); *The Florida Bar v. Kay,* 232 So.2d 378 (Fla.), *cert.*

denied, 400 U.S. 956, 91 S.Ct. 352, 27 L.Ed.2d 264 (1970).

Second, Christie argues that disbarment is not required because, notwithstanding the serious nature of his misconduct, it did not involve the more serious crime of sexual contact.[2] *See* Annotation, *Sexual Misconduct as Ground for Disciplining Attorney or Judge,* 43 A.L.R. 4th 1062 (1986 & Supp.1989). In support of his position, Christie cites a case with a factual pattern similar to his own. *In the Matter of Disciplinary Proceedings Against Martin,* 112 Wis.2d 661, 334 N.W.2d 107 (1983). In that case, a Wisconsin attorney was found to have contributed to the delinquency of a minor by serving a fourteen year-old boy alcohol in his home, taking him to bars, and allowing him to spend nights in his bed with him. *Id.* 334 N.W.2d at 108. Allegations of sexual contact made by the boy were never proved or prosecuted. The Supreme Court of Wisconsin suspended the attorney for six months for his professional misconduct. *Id.* 334 N.W.2d at 110.

Third, Christie argues that this Court should not impose the ultimate sanction of disbarment because of the manner in which he has addressed both his legal difficulties and his personal problems. Christie notes that he made a full and complete confession to the police, the presentence officer of the Family Court, the Board, and his treating physicians. Christie notified the President Judge of the Superior Court, for whom he was working, and immediately offered his resignation as a law clerk. He also notified Disciplinary Counsel directly after making his confession. Christie notes that the record reflects that he voluntarily did not pursue the practice of law, did not oppose the imposition of an interim suspension during the pendency of this proceeding, voluntarily sought treatment for his problem, and has continued in therapy for almost three years. Christie argues

---

**2.** Christie has cited cases from two other jurisdictions where attorneys who were found to be repetitive homosexual pedophiles were suspended, rather than disbarred. Both of these cases included intercourse with minor boys. Christie is not a repetitive homosexual pedophile, but, submits that he has brought these cases to the

Court's attention to demonstrate how, in cases even more serious than his own, other courts have ordered suspensions, with protective conditions, not disbarments. *In the Matter of Sprott,* 288 S.C. 457, 343 S.E.2d 448 (1986); *Attorney Griev. Comm'n v. Mitchell,* 308 Md. 653, 521 A.2d 746 (Md.1987).

that these facts demonstrate that he "has chosen the path of honesty, cooperation with authority and rehabilitation [and that this] is a reflection of his character as a human being and responsible member of this society."

Fourth, Christie argues that an important factor in considering an appropriate sanction for his professional misconduct is the lack of voluntariness involved in his sexual attractions and orientation. In the expert testimony presented on Christie's behalf, Dr. Berlin stated:

> ... [T]here's a lot of research and to try and understand why people experience a (inaudible) kinds of sexual desires. Perhaps the most important point is, though, that people do not decide voluntarily the nature of their sexual attractions. They discover them. In other words, I'm not attracted to women because I was a good child and decided to grow up that way. I discovered in growing up that that's the nature of my sexual orientation and certainly in our society I'm very lucky to be able to make such a discovery. Mr. Christie did not decide volitionally that he would have difficulty in intimate relationships with females. And he clearly does. And that he would be aroused sexually by males, both adults and adolescents. He discovered that and then he has to struggle in life, out of the fact that he has discovered he has a different kind of sexual orientation. So the point I would make is that he's afflicted with this problem rather than choosing to have the problem. Now, it is his responsibility to do something about it and that's part of what therapy's about.

Finally, Christie suggests that his actions are in sharp contrast with those of other attorneys who have been disbarred because they have refused to acknowledge the seriousness of their wrongdoing or to accept responsibility for their actions. *People v. Grenemyer*, 745 P.2d 1027 (Colo.1987). Christie submits that the record reflects that he has been truly remorseful for his misconduct. The Family Court Judge, who sentenced Christie, stated " ... you have presented yourself to this Court as a man who is, in my opinion, overwhelmingly remorseful, ashamed and committed to correcting the problem. This is unusual in my experience on the Bench." The record reflects that Christie attempted to commit suicide shortly after these incidents occurred. He is still being treated by a psychiatrist for depression.

Disciplinary Counsel also submits that, considering the nature of Christie's misconduct, a period of suspension, rather than disbarment, is appropriate. Disciplinary Counsel suggests that this Court suspend Christie prospectively for a period of two years.[3] In support of her position, Disciplinary Counsel asserts that attorney misconduct involving moral turpitude has not uniformly resulted in disbarment by this Court. *Matter of Sandbach*, 546 A.2d 345; *In re Sanders*, 498 A.2d 148; *In re Ryan*, 498 A.2d at 518. Christie requests that if he is suspended, the period of suspension be effective retroactively to the date of his interim suspension by this Court. In support of this request, Christie cites a case similar to his own, where the Supreme Court of New Jersey imposed a three-year suspension which was effective retroactively. *In the Matter of Herman*, 108 N.J. 66, 527 A.2d 868 (1987).

## V

Proceedings for discipline are not criminal in character, but are "in the nature of an investigation by the Court into the conduct of its own officers." *In re Morford*, Del.Supr., 46 Del. 144, 80 A.2d 429, 432 (1951). Each case is fact sensitive. In determining an appropriate sanction, this Court must "protect the interests of the public and the [B]ar while giving due consideration to the interests of the individual involved." *Matter of Litwin*, 104 N.J. 362, 517 A.2d 378 (1986) (citations omitted); *Matter of Kinnear*, 105 N.J. 391, 522 A.2d 414, 415 (1987).

---

**3.** A suspension may be imposed by the Court "for an appropriate fixed period of time not in excess of three years." Bd. Prof. Resp. R. 8(a)(2).

Christie committed these acts of misconduct within a few months of his admission to the Bar. He was still a law clerk. He has never had a client and has never practiced law. *See Matter of McLaughlin,* 105 N.J. 457, 522 A.2d 999 (1987). Christie has been cooperative and remorseful. Nevertheless, of utmost significance is the fact that Christie's misconduct has injured two young children. That misconduct, involving moral turpitude, cannot be condoned despite Christie's complete cooperation in this matter and his inexperience as a member of this Bar. *Cf. In re Sanders,* 498 A.2d at 150. Thus, we agree with the Board's statement that "[w]hile Christie's misconduct did not involve professional duties to the public, to the legal system, or to the profession, his failure to maintain his personal integrity can neither be condoned nor tolerated and severe discipline must be imposed."

We are aware that, as of this date, Christie has already been suspended either *de facto* or *de jure*[4] for a period of three years and that under our Rules, a disbarred lawyer may apply for readmission to the Bar within five years. Thus, had Christie been disbarred promptly following his misconduct, he would have been eligible to seek readmission to the Bar within the next two years. Consequently, a prospective suspension now, for the maximum period of three years, would result in a more lengthy preclusion from applying for readmission to the Bar than the minimum five year period of preclusion that would have followed a prompt disbarment. However, Christie must bear responsibility for the extended nature of these proceedings, which has been the direct result of this Court's concern for the victims of his misconduct.

■ We have carefully considered the record in this case. We have considered the Board's reports, in particular, the evidence of aggravating and mitigating circumstances.[5] We also have considered the recommendations of Disciplinary Counsel and Christie's attorney. We have concluded that the interests of the public, the Bar, and Christie would all be served, if *inter alia,* Christie is suspended prospectively for the *maximum period* of three years.

Accordingly, IT IS ADJUDGED and ORDERED that Christie be disciplined as follows:

1. That Christie be prohibited and suspended from engaging in the practice of law, as a member of the Delaware Bar, for a period of three years, commencing April 16, 1990, and ending on April 15, 1993.

2. That during such period, Christie shall not (a) share in any legal fees arising from clients or cases referred by him, during the period of suspension, to any other attorney, or (b) share in any legal fees earned for services by others during such period of suspension.

3. That Christie shall comply with the provisions of Rule 24 of the Rules of the Board on Professional Responsibility.

4. That during such period of suspension, Christie shall continue counselling with a physician, or another appropriate and qualified health care professional concerning his sexual disorder, known as non-exclusive or regressed homosexual pedophi-

---

4. This Court entered an order of interim suspension on June 14, 1989.

5. Under Standard 9.32 of the *ABA Standards for Imposing Lawyer Sanctions,* mitigating circumstances possibly justifying a reduction in the degree of discipline to be imposed include:
   (a) absence of a prior disciplinary record;
   (b) absence of a dishonest or selfish motive;
   (c) personal or emotional problems;
   (d) timely good faith effort to make restitution or to rectify consequences of misconduct;
   (e) full and free disclosure to disciplinary board of cooperative attitude toward proceedings;
   (f) inexperience in the practice of law;
   (g) character or reputation;
   (h) physical or mental disability or impairment;
   (i) delay in disciplinary proceedings;
   (j) interim rehabilitation;
   (k) imposition of other penalties or sanctions;
   (*l*) remorse;
   (m) remoteness of prior offenses.
   Many of the factors listed in Standard 9.32 were present in this case.

lia, for as long as such treatment is deemed warranted by the health care professional.

5. That during such period of suspension, Christie shall make arrangements with Disciplinary Counsel for the Board on Professional Responsibility for the payment of the costs of the proceedings before the Board.

6. That this Opinion and Order be disseminated by Disciplinary Counsel in accordance with Rule 3 and Rule 14 of the Rules of the Board on Professional Responsibility.