**In the Matter of Peter Warren GREEN, a member of the Bar of the State of Delaware.**

Supreme Court of Delaware.

Argued Dec. 9, 1974.

Decided Jan. 17, 1975.

Disciplinary proceedings upon Final Report of the Censor Committee of the Supreme Court.

N. Maxson Terry, Jr., Dover, for the Censor Committee.

Respondent, pro se.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

PER CURIAM:

The Censor Committee of this Court has recommended disciplinary action against the respondent Peter Warren Green, a member of the Delaware Bar, upon the basis of findings of fact summarized as follows:

I.

On August 18, 1973, the respondent received from certain clients, the purchasers in a real estate settlement, the sum of approximately $24,000. which he was to pay over to a bank in satisfaction of two mortgages placed on the property by the seller, the satisfaction of the mortgages or a release from the lien thereof being necessary to clear title. The respondent failed to deliver the funds to the bank until February 4, 1974, after repeated demands upon him and complaint to the Censor Committee. Preliminary inquiry of the respondent by a member of the Censor Committee revealed that, although the respondent maintained a "Clients' Account" and a personal "Office Account", funds from the former frequently were commingled with funds in the latter. The respondent agreed in March 1974 to have an audit made of his books and to submit an audit report to the Censor Committee. The respondent failed to do so and, in July 1974, the respondent was called before the Committee on a rule to show cause why further action should not be taken against him.

At the July hearing, the respondent stated, as his reasons for failing to submit an audit report, that his books were not up to date and that he had personnel problems in his office. The respondent produced a statement prepared by a public accountant, retained approximately one week before the hearing, to show that the combination of respondent's Office Account and Clients' Account "at all times contained sufficient funds to have paid off the two mortgages in question". However, the Committee found that the accountant's statement was insufficient to show whether sufficient balances had been maintained to meet all escrow obligations. The Committee adjourned the hearing to September 10, 1974, for the purpose of affording the respondent opportunity to submit an account-

ant's report of the handling of "all moneys belonging to or held for the benefit of clients for the period from August 1, 1973 to the present". The September 10 meeting of the Committee was further adjourned to September 30, 1974 upon the request of the respondent who stated that the accountant had not been able to complete the report "partly because of the poor state of the books and the fact that posting was still not up to date, and partly because of the large volume of transactions in the two accounts to be audited".

At the September 30 hearing, a written report by the accountant was submitted showing an investigation of the respondent's books and records for the period of August 1, 1973 through August 31, 1974. The report showed clients' fund balances and the cash balances in the respondent's Clients' Account and Office Account at the end of each month. The accountant's report showed "that at the end of every month during the period of investigation, the cash balances in Respondent's clients' account and office account added together were insufficient to meet Respondent's escrow obligations". The deficits shown by the accountant's report after payment of substantially all legal fees to which the respondent was entitled, ranged from over $20,000. at the beginning of the period to over $45,000. at the end of the period. The accountant testified at the hearing that the increase of deficits was the result of funds having been withdrawn for the respondent's personal use. The record showed that funds which should have been deposited in the Clients' Account were not deposited therein, but were deposited in the Office Account instead. The accountant testified that an adequate bookkeeping procedures system was being initiated for the

respondent from which he could henceforth ascertain balances in various accounts on a running basis.

The respondent testified at the September 30 hearing that he was not aware of the deficits; that his failure to be aware of the deficits was caused largely by the fact that his previous accountant had not set up an adequate set of books for him; that he had difficulties with bookkeepers, and that the pressures of conducting a one-man practice had resulted in inadequate organization of his books and records. The respondent testified that, upon learning of the deficits, he had immediately paid approximately $17,000. thereof from funds obtained from personal sources and had initiated arrangements to borrow sufficient funds necessary to meet the balance of the deficits.

By letter dated October 28, 1974, the accountant certified to the Censor Committee (1) that the respondent "had deposited sufficient monies from personal sources to his escrow account to cover all amounts that were owing for clients as of August 31, 1974"; (2) that "funds received from clients subsequent to August 31, 1974 have been accounted for and no shortages exist with respect to these new funds"; and (3) that a "new bookkeeping system was installed on October 22, 1974, and is in operation at this date", and that the respondent's employees had been instructed as to its application "and would be monitored on its use on an on-going basis".

II.

Upon the basis of the foregoing, the Censor Committee concluded that the respondent has violated DR 9–102(A),* DR

---

* DR 9–102(A) provides:

"DR 9–102. Preserving Identity of Funds and Property of a Client

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is sit-

uated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer

9–102(B)(4),** and DR 1–102(A)(6)*** of the Delaware Lawyer's Code of Professional Responsibility promulgated by this Court.

## III.

The respondent filed no exceptions to the report of the Censor Committee. We accept the findings of fact made by the Censor Committee and agree with its conclusions of law that the respondent has been guilty of unprofessional conduct in that he has violated the specified Disciplinary Rules of the Delaware Lawyer's Code of Professional Responsibility.

## IV.

In determining the appropriate disciplinary action to be taken in this case, the Court has taken into consideration the following extenuating circumstances: the respondent has now rectified the deficits in his accounts; no one has sustained any actual loss by reason of the respondent's misconduct; corrective action has been taken by the respondent to guard against future violation of the disciplinary rules; the respondent was ill during the Summer of 1974; and the respondent ultimately cooperated fully and candidly with the Censor Committee.

Upon due consideration of those circumstances, the report of the Censor Committee, and the representations made by the respondent to this Court, it is hereby ad-

judged and ordered that the respondent be disciplined as follows:

(1) The publication of this Opinion shall constitute a public censure.

(2) The respondent shall forfeit and pay a fine of $2,500. to be paid over, not later than April 15, 1975, to the Trustees of the Clients' Security Trust Fund of the Bar of the State of Delaware.

---

or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

** DR 9–102(B)(4) provides:
"(B) A lawyer shall:
 *　　*　　*　　*
"(4) Promptly pay or deliver to the client as requested by a client the funds, securities,

or other properties in the possession of the lawyer which the client is entitled to receive."

*** DR 1–102(A)(6) provides:
"(A) A lawyer shall not:
 *　　*　　*　　*　　*
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."