**In the Matter of a Member of the Bar of the Supreme Court of Delaware James E. HIGGINS.**

Supreme Court of Delaware.

Submitted: Nov. 14, 1990.
Decided: Nov. 15, 1990.

Charles Slanina, Disciplinary Counsel for the Board on Professional Responsibility, Wilmington.

Robert D. Goldberg of Biggs & Battaglia, Wilmington, for James E. Higgins.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

Disciplinary Proceeding Upon Final Report of the Board on Professional Responsibility of the Supreme Court.

PER CURIAM:

This is a Disciplinary Proceeding. A panel of the Board on Professional Responsibility ("Board")[1] held a hearing involving charges of professional misconduct against the Respondent, James E. Higgins ("Higgins"). Bd.Prof.Resp.R. 9(d). The Board's proceedings followed Higgins' guilty plea to a criminal charge of feloniously converting several clients' funds, which he held in trust, to his own use.

The Board has issued a final report to this Court ("Report"). The Board found that Higgins had violated various provisions of the Delaware Lawyers' Rules of Professional Conduct. Higgins, who is now incarcerated, has represented to this Court through his attorney that he takes no exception to the Board's findings. Therefore, the sole issue to be addressed by this Court is the form of discipline to be imposed. The Court has concluded that Higgins should be disbarred.

I

The Board's findings of fact with respect to the underlying charges of professional misconduct, as set forth in its Report, are in pertinent part, as follows:

1. James E. Higgins, Esquire ("Respondent") is a member of the Bar of the Supreme Court of Delaware, admitted in November 1976.

2. At all times relevant to this petition, Respondent was engaged in the private practice of law in Newark, Delaware.

3. On or about May 26, 1989, Respondent performed a real estate settlement in which James C. Smith and Margaret A. Smith purchased property located at 321 W. Franklin Avenue, Wilmington Manor, New Castle, Delaware. Respon-

dent failed to satisfy a sewer bill of $72.38 after having received the funds at settlement to do so. Instead, Respondent converted this money to his own use.

4. On or about June 9, 1989, Respondent performed a real estate settlement in which Joseph A. Contini and Rosemary Contini were the purchasers of a property located at 604 Valley Run Road, Bear, Delaware. Respondent failed to satisfy a county tax lien of $782.38 and an appraisal fee of $265.00 after having received settlement funds to do so. Instead, Respondent converted these sums to his use.

5. On or about July 28, 1989, Respondent performed a real estate settlement in which Karen S. Johnson was the purchaser of property located at 401 Creekside Drive, Building 22, Newark, Delaware. Respondent failed to satisfy a mortgage of $50,177.00 held by the Wilmington Trust Company after having received the funds at settlement to do so. Instead, Respondent converted this sum to his own use.

6. On or about August 31, 1989, Respondent performed a real estate settlement in which Douglas L. Holveck was the purchaser of property located at 208 Durso Drive, Harmony Hills, Newark, Delaware. Respondent failed to satisfy a mortgage of $30,259.84 held by Sovran Mortgage Company after having received the funds at settlement to do so. Instead, Respondent converted this sum to his own use.

7. On or about September 6, 1989, Respondent performed a real estate settlement in which Lawrence D. Smith and Linda M. Smith were the purchasers of property located at 10 Copperfield Lane, Newark, Delaware. Respondent failed to satisfy the existing mortgage of $47,835.75 held by Fidelity Bond & Mortgage Company after having received the funds at settlement to do so. Instead, Respondent converted this sum to his own use.

---

1. The Board is an agency of this Court, created under Supreme Court Rule 62. *In re Kennedy*, Del.Supr., 472 A.2d 1317, 1318–19 (1984).

8. On or about September 8, 1989, Respondent performed a real estate settlement in which Robert F. Kinsley, Jr. and Roxanne C. Kinsley were the purchasers of property located at 111 Reamer Avenue, Bellemoor, Wilmington, Delaware. Respondent failed to satisfy the existing mortgage of $33,853.38 held by Chemical Mortgage Company after having received the funds at settlement to do so. Instead, Respondent converted this sum to his own use.

9. On or about September 9, 1989, Respondent performed a real estate settlement in which Albert L. Flowers was the purchaser of property located at 306 Howell Drive, Collins Park, New Castle, Delaware. Respondent failed to satisfy the existing mortgage of $14,096.35 after having received· the funds at settlement to do so. Instead, Respondent converted this sum to his own use.

10. On or about September 29, 1989, Respondent performed a real estate settlement in which Douglas C. Miller and Deborah A. Miller were the purchasers of property located at 112 Woodward Avenue, Wilmington, Delaware. Respondent failed to satisfy the property tax of $421.82 after having received the funds at settlement to do so. Instead, Respondent converted this sum to his own use.

11. On or about October 10, 1989, Respondent performed a real estate settlement in which David C. Hobbs and N. Joan Hobbs were the purchasers of property located at 13 Ferris Court, Beaver Brook Crest, New Castle, Delaware. Respondent failed to satisfy the existing mortgage of $61,098.60 held by Sovran Mortgage Company, the County property tax of $214.35 and an appraisal fee of $120.00 after having received the funds at settlement to do so. Instead, Respondent converted these sums to his own use.

12. Respondent failed to maintain cash receipts journals, disbursement journals, separate ledgers, trial balances and reconciliations for settlements which identified the proceeds received by Respondent and the disbursement of those proceeds as required by Interpretive Guideline No. 2 to Rule 1.15 of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC").

The Board's Report to this court also reflects that:

Richard H. May, Esquire was appointed receiver of the Respondent's law practice by the Court of Chancery. His report to the Court of Chancery is Disciplinary Counsel Exhibit 3. Respondent's files and practice records were in disarray. Respondent was not keeping the kinds of financial books and records required by the rules. When he interviewed the Respondent, Mr. Higgins appeared to be open and forthright. Gunnip & Company, accountants, were retained to review the status of Respondent's escrow accounts. Their audit disclosed that funds were missing from real estate escrow accounts and had been misappropriated. The escrow accounts contained a balance of $29,000.00. The audit disclosed $250,000.00 in unsatisfied mortgage liens which resulted in a $230,000.00 short fall.

Deputy Attorney General Marsha Epstein, Esquire, testified that she was assigned to prosecute the Respondent for the crimes associated with these thefts of client property. Disciplinary Counsel Exhibit 6 is the Superior Court Criminal information filed against the Respondent. Disciplinary Counsel Exhibit 7 is the Plea Agreement executed by the Respondent. A Certified Copy of the Respondent's record of conviction was received as Disciplinary Counsel Exhibit 8. Under Board Rule 16(e), it is conclusive evidence of the commission of the crime mentioned (Felony Theft) by the Respondent. Mr. Higgins is currently incarcerated as a result of this conviction. Respondent cooperated with Ms. Epstein's investigation. He agreed to repay all the stolen money. No probative evidence regarding the status of restitution was offered or received.

Richard E. Yerger, an executive with Ticor Title Insurance Company (hereafter

"Ticor") testified that ultimately his company paid all of the claims against Mr. Higgins for misappropriation, because he was acting in these real estate settlements as Ticor's agent. Disciplinary Counsel Exhibit 4 is Ticor's internal investigative report into this matter. It discloses that Respondent hoped to make up the misappropriations by selling real estate at a profit. Respondent cooperated with Ticor's investigation.

The Respondent failed to appear before the Board; offered no witnesses in his defense; and no evidence of any kind in mitigation of his conduct.

## II

The Board's conclusions of law with respect to the underlying charges of professional misconduct, as set forth in its Report, are in pertinent part, as follows:

1). Respondent is guilty as alleged in each Count of the Petition to Discipline.

2). By illegally converting settlement funds to his own use as described in paragraphs 3, 4, 5, 6, 7, 8, 9 10 and 11 of the Petition to Discipline, incorporated herein by reference, Respondent violated DLRPC 8.4(b), which provides: "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

3). By illegally converting settlement funds to his own use as described in paragraphs 3, 4, 5, 6, 7, 8, 9, 10 and 11 of the Petition to Discipline, incorporated herein by reference, Respondent violated DLRPC 8.4(c), which provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

4). By failing to maintain his books and records as described in paragraph 12 of the Petition to Discipline, incorporated herein by reference, Respondent violated Interpretive Guideline No. 2(a)(1)–(8) to DLRPC 1.15(a), which pertains to the handling of fiduciary funds.

5). By stealing settlement funds as described in paragraphs 3 through 11 of the Petition to Discipline, incorporated herein by reference, Respondent violated DLRPC 1.15(a), which provides in part: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."

## III

This Court has made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Report. Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings. *Matter of Higgins*, Del. Supr., 565 A.2d 901, 906–07 (1989); *In re Lewis*, Del.Supr., 528 A.2d 1192, 1193 (1987); *In re Kennedy*, Del.Supr., 472 A.2d 1317, 1326 (1984); *Matter of Reed*, Del. Supr., 429 A.2d 987, 991 (1981). We review the Board's conclusions of law *de novo*. *Matter of Berl*, Del.Supr., 540 A.2d 410, 413 (1988). We are satisfied that the record before us clearly supports the findings of fact and the conclusions of law made by the Board in this case. *Matter of Sullivan*, Del.Supr., 530 A.2d 1115, 1117 (1987); *In re Lewis*, Del.Supr., 528 A.2d 1192 (1987); *In re Sanders*, Del.Supr., 498 A.2d 148 (1985); *In re Frabizzio*, Del. Supr., 498 A.2d 1076 (1985). *See also In re Ryan*, Del.Supr., 498 A.2d 515 (1985).

## IV

Higgins' prior neglect of his clients' affairs resulted in his suspension from the practice of law last year. *Matter of Higgins*, Del.Supr., 565 A.2d 901 (1989). The misappropriation of clients' funds is one of the most egregious acts of professional misconduct that any attorney can commit. The appropriate sanction for Higgins in this matter is disbarment. *In the Matter of Clark*, Del.Supr., 250 A.2d 505 (1969); *ABA Standards for Imposing Lawyer Sanctions*, Standard 4.1 (1986).

Under our exclusive jurisdiction over the Bar of Delaware, IT IS ORDERED that James E. Higgins be disbarred from membership in the Delaware Bar. His name shall be immediately stricken from the Roll of Attorneys entitled to practice before the courts of this State.