**In the Matter of a Retired Member of the Bar of the Supreme Court of Delaware: Robert T. BARRETT.**

Supreme Court of Delaware.

Submitted: Sept. 14, 1993.
Decided: Sept. 22, 1993.

J. Jay Lazzeri of Barrows, McNamara, Scanlon, Malkewicz, and Taylor, P.A., Dover, for respondent.

Charles Slanina, Disciplinary Counsel for Bd. on Professional Responsibility, Wilmington.

Before MOORE, WALSH and HOLLAND, JJ.

PER CURIAM:

This is a Disciplinary Proceeding. A panel of the Board on Professional Responsibility ("Board")[1] held a hearing involving charges of professional misconduct against the Respondent, Robert T. Barrett ("Barrett"). Bd.Prof.Resp.R. 9(d).[2] The Board has issued a final report to this Court ("Report").

The record reflects that Barrett is responsible for the loss of client property by his negligent failure to preserve the client's funds in a segregated bank account. The client has been reimbursed by the Delaware Lawyers' Fund for Client Protection. The Court has concluded that Barrett should be suspended from the practice of law for a period of three years.

**I**

The Board's findings of fact with respect to the underlying charges of professional

---

**1.** The Board is an agency of this Court. Supr. Ct.R. 62; *In re Kennedy*, Del.Supr., 472 A.2d 1317, 1318–19 (1984).

**2.** The Court acknowledges the assistance provided by J. Jay Lazzeri, who was appointed to represent Barrett *pro bono publico*. Such representation was in the best tradition of the Delaware Bar.

misconduct, as set forth in its Report, are in pertinent part, as follows:

1. Robert T. Barrett ("Respondent") is a member of the Bar of the Supreme Court of the State of Delaware who, on April 14, 1986, after 20 years practicing law, was issued a Certificate of Retirement pursuant to Supreme Court Rule 69, as a person who is not engaged in the practice of law either as a lawyer accepting clients from the public or as a lawyer employed as such by an employer. Respondent's retirement was unrelated to the present matter.

.        .        .        .        .

2. For at least two years in the late 1970's, Respondent practiced law as the senior member and office administrator of the firm of Barrett & Barrett, P.A. Respondent's specialty was domestic relations. His younger brother, William T. Barrett, handled estates, and George Wein, who died on June 18, 1979, did personal injury work as Of Counsel to the firm.

3. On May 21, 1975, Edna Taylor sustained injuries in an automobile accident, which primarily through George Wein's representation resulted in a net settlement of $5,166.67. On December 22, 1976, Edna Taylor was involved in another automobile accident causing her death. She was survived by her five-year-old daughter Tonya. Emma Taylor, Edna Taylor's mother, retained Respondent in Family Court custody proceedings concerning Tonya. She retained George Wein to represent her daughter's estate in connection with a wrongful death claim, which was settled for $20,000, plus Personal Injury Protection benefits of $6,666.

4. Respondent's law firm also represented Emma Taylor as the personal representative in the settlement of her daughter's estate, the sole beneficiary of which was her minor granddaughter Tonya. Among other items, the first annual account reflects receipt on June 6, 1977 of $5,166.67 in connection with the first accident, and on January 27, 1978 of $6,066 in Personal Injury Protection ben-

efits, net of $600 for attorneys fees, relating to the second accident. The second and final account discloses, among other items, $13,333.33 for the wrongful death settlement net of $6,666.67 in attorneys fees, and a balance due the estate of almost $21,000, after payment of about $5,000 for funeral and estate administration expenses.

.        .        .        .        .

5. Emma Taylor wrote to prior Disciplinary Counsel on September 27, 1989, shortly after her granddaughter reached age 18, concerning the absence of an accounting for all the funds that should have been held for her granddaughter's benefit. Before previous Disciplinary Counsel's receipt of Emma Taylor's letter, Respondent had retrieved his file concerning Tonya's custody, but he could not find any files relating to the automobile accidents settlements or the estate of Edna Taylor. However, Respondent had been able to assist Emma Taylor in locating one Wilmington Trust account, which had been opened on January 31, 1977 and contained the PIP benefits (less the $600 in attorneys fees) deposited on August 18, 1978, and a 1976 federal income tax refund of $656.75 deposited on June 7, 1977, for a total balance in 1989 (including interest) of $14,517.83. In view of the estate expenses of approximately $5,000, it is plausible, but not documented, that the net proceeds from the settlement arising out of the first accident were properly applied for estate purposes. But totally unaccounted for are the net wrongful death proceeds from the second accident of about $13,000, which if invested in the same Wilmington Trust account would have resulted in an additional sum of about $27,000 being available to Tonya Taylor Kennedy (her married name) upon her majority in 1989, not to mention additional interest that should have accrued in the three years since then.

6. Prior Disciplinary Counsel referred Emma Taylor's letter to an Assistant Disciplinary Counsel, who on February 19, 1990 wrote to Respondent asking for

his assistance in the investigation of the matter. There was no response because Respondent never received Assistant Disciplinary Counsel's letter. On June 13, 1991, current Disciplinary Counsel revived the investigation by means of a subpoena duces tecum issued to Respondent, whose sworn answers were recorded in response to Disciplinary Counsel's questions on July 26, 1991, but who still could not produce any files.

7. On September 30, 1991, Panel B of the Preliminary Review Committee approved the filing of a Petition to Discipline against Respondent. The Petition to Discipline was dated October 28, 1991, and was delivered to Respondent on November 6, 1991.... The Petition to Discipline does not specifically charge Respondent with misappropriation of funds.

8. Although specifically notified by Disciplinary Counsel in advance that his failure to answer the Petition to Discipline would cause the charges to be deemed admitted pursuant to Board on Professional Responsibility Rule 9(d), Respondent did not file a formal or timely response. He did submit as an exhibit without objection at the Board hearing a letter to Disciplinary Counsel dated December 2, 1991 that he had never mailed. In that letter Respondent stated that he had been "scared" and "concerned" since 1986 when he closed his practice and could not find the Taylor files, and "scared" or "frightened" since 1989 when he still could not locate the Taylor files upon Tonya's majority. Respondent acknowledged "improper conduct" when he failed to "do something about it on these occasions," and he stated that therefore he did "deserve punishment." Respondent recollected "a wrongful death action started by [his] law firm," giving rise to "an obligation to make Mrs. Taylor and her granddaughter whole." However, Respondent stated he did not know how he could make restitution because he had not had financial success and earned "very modestly now." He indicated that he had provided quality representation to his clients for over twenty years of practice "[w]ith the

exception of Mrs. Taylor and two others." Respondent recounted "dreams— dreams of taking and using her money— dreams of others in [his] office doing it— dreams of it not being true." But "regardless of which of [the] dreams is true," Respondent accepted responsibility because, "while [his[ contact with this case initially was very slight," he was "at all critical times either the attorney directly responsible or was the senior attorney with administrative or supervisory responsibility over the case while it was handled by others."

9. Pursuant to timely notice, the undersigned panel of the Board convened a hearing on February 14, 1992. Respondent appeared *pro se*. Disciplinary Counsel without objection submitted exhibits he had shown to Respondent in advance of the hearing, consisting of materials from Disciplinary Counsel's file (the Petition to Discipline, hearing notices, complainant's letter, Assistant Disciplinary Counsel's reports, Respondent's sworn pre-hearing recorded interview, investigatory correspondence and memoranda, Register of Wills files on Edna Taylor's estate, two Wilmington Trust account statements, Respondent's certificate of retirement, and Emma Taylor's file). Also without objection, Disciplinary Counsel submitted an additional exhibit consisting of a letter received on July 8, 1991 from William T. Barrett at the Vermont Law School. William Barrett stated his "rather sketchy" recollection to be that "a guardianship was established for Tonya Taylor with her grandmother as the guardian," but no records of any Court of Chancery proceedings were made a part of the Board record. Admitted without objection as Board exhibits were three documents referred to by various witnesses: A Statement of Claim to Trustees of the Clients' Security Trust fund of the Bar of Delaware submitted on June 27, 1991 by Emma Taylor and Tonya Kennedy; a letter dated June 27, 1978 from William T. Barrett to Emma Taylor concerning the inheritance tax liability for the Es-

tate of Edna Taylor; and a letter dated December 2, 1977 from William T. Barrett to Emma Taylor concerning the Estate of Edna Taylor. In addition to his letter dated December 2, 1991, Respondent without objection submitted after the hearing, on April 10, 1992, a letter dated December 30, 1976 from George Wein to the Register of Wills, forwarding a certified copy of Edna Taylor's death certificate. Absent from the hearing record are any documents from the two Superior Court actions, *Taylor v. Bailey*, C.A. No. 504, 1976, and *Taylor v. Toppin, Barnes and The City of Dover*, C.A. No. 339, 1977, which might have shown at least the initial disposition of the proceeds of the settlements arising out of the two automobile accidents. Also absent from the hearing record are any additional account statements from Wilmington Trust, which Emma Taylor's current counsel, William Witham, testified would have cost $20 for each monthly bank record.

10. Three witnesses appeared at the Board hearing, all of whom the undersigned panel of the Board assessed as highly credible. Emma Taylor testified that George Wein handled her late daughter's estate, and then Respondent did so. As far as she knew, Respondent set up an account at Wilmington Trust for her granddaughter, but she never had possession of a checkbook or received bank statements. William Witham, Esquire—Emma Taylor's lawyer in connection with her application to the Clients' Security Trust Fund concerning the loss of the net wrongful death settlement proceeds plus interest—testified that he had worked in Respondent's firm when George Wein and William Barrett were there, and that generally the former did personal injury work and the latter handled estates, while Respondent had a general practice with a lot of criminal and domestic work and some personal injury work. Respondent testified to the same effect as to which lawyers in his firm had handled which areas of practice. He had no reason to believe that any of the other lawyers in his firm, or

Emma Taylor, had taken any money belonging to Tonya Taylor Kennedy. He just did not know what happened. Therefore, having been unsuccessful in his exhaustive efforts to find his missing files relating to this matter, Respondent summarized his position as follows: "If I did wrong, I deserve to be punished. Since I did wrong, I deserve to [be] punished."

11. Not satisfied that Respondent was adequately representing himself, the undersigned panel of the Board arranged after the hearing for J. Jay Lazzeri, Esquire to appear on his behalf *pro bono publico*. By letter dated March 27, 1992, Respondent's counsel reported that he had met with Respondent on March 9, 1992, but was unable to obtain further information from Respondent that was not already a part of the record because Respondent lacked any specific recollection and still had not located his own files. Respondent's counsel stated that he had conducted his own investigation and requested the opportunity to supplement the record with additional documentary evidence, which was later permitted without objection. Neither Respondent's counsel nor Disciplinary Counsel requested that the hearing be reopened for additional testimony. Although Respondent's counsel raised the possibility that Respondent had experienced a substance abuse problem during the time of his firm's representations relating to the various Taylor matters in the mid-to-late 1970s, Respondent's counsel subsequently waived the right to submit evidence in mitigation based on an evaluation by Frank Lawlor and/or the Lawyer Assistance Program.

## II

The Board's findings of fact with respect to the underlying charges of professional misconduct, as set forth in its Report, are in pertinent part, as follows:

14. Emma Taylor retained Respondent's law firm to represent the interests of her minor granddaughter as the sole beneficiary of her daughter's estate.

15. The record contains clear and convincing evidence that the granddaughter, Tonya Taylor Kennedy, sustained the loss of approximately $13,000, constituting the net proceeds of a wrongful death settlement in 1978, with a present value in excess of $30,000.

## III

The Board's conclusions of law with respect to the underlying charges of professional misconduct, as set forth in its Report, are in pertinent part, as follows:

16. Respondent is responsible for the loss of client property arising from his negligent failure to assure that the wrongful death settlement funds received by his firm were deposited and preserved in a segregated account until the majority of the minor beneficiary thereof.

17. Respondent violated Rule 1.15(b) of the Delaware Lawyers' Rules of Professional Conduct by failing to account for and deliver to Tonya Taylor Kennedy upon her majority the net proceeds of the wrongful death settlement arising from her mother's fatal automobile accident.

### Mitigating Factors

18. Respondent failed to establish by a preponderance of evidence any factors in mitigation of his negligent misconduct that caused a serious financial loss to one of his firm's clients.

### Aggravating Factors

19. At the time his firm came into possession of the proceeds of the wrongful death settlement in 1978, Respondent had had substantial experience in the practice of law. Further, he knew of the vulnerability of the victim, a five-year-old child who was the sole beneficiary of the estate of her mother who had died as the result of an automobile accident.

## IV

■ This Court has made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Report. Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings. *Matter of Brewster,* Del.Supr., 587 A.2d 1067, 1069 (1991). We review the Board's conclusions of law *de novo. Id.* We are satisfied that the record before us clearly supports the findings of fact and the conclusions of law made by the Board in this case. *See id.*

## V

■ The inherent and exclusive authority for disciplining members of its Bar is vested in this Court. *In re Green,* Del. Supr., 464 A.2d 881, 885 (1983). This Court has wide latitude in determining the form of discipline to be imposed. *Matter of a Member of the Bar,* Del.Supr., 226 A.2d 705, 707 (1967). In imposing sanctions, this Court is guided by its prior precedents. *See Matter of Christie,* Del.Supr., 574 A.2d 845, 853 (1990). Those prior precedents reflect, *inter alia,* that this Court has cited, with approval, the *ABA Standards for Imposing Lawyer Sanctions. See, e.g., Matter of Brewster,* Del.Supr., 587 A.2d 1067, 1069–71 (1991); *Matter of Clyne,* Del. Supr., 581 A.2d 1118, 1125 (1990); *Matter of Higgins,* Del.Supr., 582 A.2d 929, 932 (1990). The relevant *American Bar Association Standard for Imposing Lawyer Sanctions* provides:

4.1 Failure to Preserve Client's Property

Absent aggravating or mitigating circumstances, upon application of the factors set out in 3.0, the following sanctions are generally appropriate in cases involving the failure to preserve client property:

4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

4.13 Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

4.14 Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

*ABA Standards for Imposing Lawyer Sanctions,* Standard 4.1.

## VI

█ The intentional conversion of a client's property to one's own use has always resulted in disbarment by this Court. *See, e.g., Matter of Higgins,* Del.Supr., 582 A.2d 929, 932 (1990); *Matter of Sullivan,* Del.Supr., 530 A.2d 1115, 1117-19 (1987); *Matter of England,* Del.Supr., 421 A.2d 885, 887 (1980); *In re Clark,* Del.Supr., 250 A.2d 505, 506 (1969). However, Barrett was neither charged nor found to have knowingly converted a client's funds to his own use. The Board found that Barrett violated the Delaware Lawyers' Rules of Professional Conduct by negligently failing to preserve his clients' property.

We have considered the Board's Report, in particular the evidence of aggravating and mitigating circumstances. The record reflects that the failure to preserve his clients' property is attributable to Barrett's lack of diligence in supervising an attorney, who is now deceased, and Barrett's negligence in maintaining his law firm's books and records. The record also reflects that Barrett's client has been reimbursed by the Delaware Lawyers' Fund for Client Protection.

█ This Court concludes that the absence of *mens rea* in the Board's ultimate finding is significant in determining an appropriate sanction for Barrett's professional misconduct. We have determined that the interests of the public, the Bar, and Barrett would all be served if, as a result of Barrett's failure to preserve his clients' property, Barrett is suspended prospectively for a period of three years. *Accord, ABA Standards for Improving Lawyer Sanctions,* Standard 4.12.

Accordingly, IT IS ADJUDGED and ORDERED that Barrett be prohibited and suspended from engaging in the practice of law, as a member of the Delaware Bar, for a period of three years, commencing October 1, 1993 and ending September 30, 1996.

Pursuant to Board on Professional Responsibility Rule 23(h), Barrett's reinstatement is expressly conditioned upon his complete compliance with *all* of the following terms:

(a) payment of all costs of these proceedings;

(b) certification of payment of full restitution to the Delaware Lawyers' Fund for Client Protection, which has compensated Barrett's clients for their loss; and

(c) certification by the Board of Bar Examiners that Barrett has successfully passed, anonymously, the regularly scheduled Delaware Bar Examination in its entirety.

This Opinion is to be disseminated by Disciplinary Counsel in accordance with Rules 3 and 14 of the Rules of the Board on Professional Responsibility.