In the Matter of a Member of The Bar of the Supreme Court of the State of Delaware: Michael P. MAGUIRE.

No. 506, 1998.

Supreme Court of Delaware.

Submitted: Feb. 9, 1999.
Decided: March 2, 1999.

Jeffrey M. Weiner, (argued), Wilmington, Delaware, and Michael P. Maguire (allocution), for Michael Maguire, Respondent.

Michael McGinniss, (argued) and Mary M. Johnston, Office of Disciplinary Counsel, Wilmington, Delaware.

Before WALSH, HOLLAND and HARTNETT, Justices.

PER CURIAM:

This Court has before it a report from the Board on Professional Responsibility ("Board") concerning a petition for discipline filed by the Office of Disciplinary Counsel ("ODC") against the Respondent, Michael P. Maguire ("Maguire"). Maguire has been a member of the Delaware Bar since 1968. Most recently, he operated as a solo practitioner. On May 19, 1997, this Court placed Maguire on interim suspension. *In re Maguire*, Del.Supr., No. 204, 1997, 1997 WL 328588 (May 19, 1997) (ORDER).

### REPORT OF THE BOARD

The Board held a hearing on August 27, 1998, at which the ODC and counsel for Maguire presented arguments. Maguire ap-

peared and made a statement on his own behalf. The Board also received supplemental submissions from the parties dated October 13, 1998. After considering the evidence presented, the Board concluded that Maguire had committed various violations of the Rules of Professional Conduct, including the misappropriation of clients' funds.

### Board Case No. 8, 1996

In April of 1994, Christopher M. Slaughter retained Maguire to represent him in a personal injury case. Although Maguire and Mr. Slaughter orally agreed to a one-third contingency fee arrangement, Maguire failed to put the agreement into writing. After determining that the driver responsible for the accident was uninsured, Maguire sought a recovery from Mr. Slaughter's insurance company. The insurance company sent Maguire a $9,000 settlement check made payable to both Maguire and Mr. Slaughter. On August 30, 1995, without obtaining authorization from Mr. Slaughter, Maguire signed Mr. Slaughter's name on the back of the check. Maguire then deposited the full amount of the settlement into his personal checking account. During the next several weeks, Maguire spent nearly the entire $6,000 that constituted Mr. Slaughter's portion of the settlement.

Mr. Slaughter subsequently asked Maguire about the status of the settlement. On November 17, 1995, Maguire issued a check to Mr. Slaughter in the amount of $500 with the notation "advance" without disclosing to Mr. Slaughter that he had already received the full settlement amount and deposited it into his own account. In January 1996, Mr. Slaughter filed a complaint with the Office of Disciplinary Counsel. Maguire distributed the remaining $5,500 in settlement funds to Mr. Slaughter in February 1996. In responding to Mr. Slaughter's disciplinary complaint, Maguire falsely stated that the matter had been resolved when the check from the insurance company arrived and "the funds were distributed the next day." Maguire subsequently lost Mr. Slaughter's file.

Maguire admits that he violated Rule 8.4(c) by "engaging in conduct involving dishonesty, fraud, deceit or misrepresentation" through his misappropriation of approximately $6,000 of Mr. Slaughter's funds from August 1995 until February 1996. By means of explanation rather than excuse,[1] Maguire also asserts that he was expecting a settlement check in another matter to arrive immediately after the check from Mr. Slaughter's insurance company, so that his use of Mr. Slaughter's funds would have been limited to a short period of time. Maguire also admits that he violated Rule 8.4(c) by misrepresenting to Mr. Slaughter that the $500 check sent to him in November 1995 was an "advance."

Maguire also admits that he violated Rule 8.1(a) by "knowingly mak[ing] a false statement of material fact" by falsely stating to the ODC that he had distributed settlement funds to Mr. Slaughter the day after the check from the insurance company arrived. In addition, Maguire admits that he violated Rule 1.5(c) by failing to put the contingency fee arrangement with Mr. Slaughter in writing. Finally, Maguire admits that he violated Rule 1.15(a) by failing to safeguard client property in that he failed to preserve Mr. Slaughter's funds and lost Mr. Slaughter's file.

### Board Case No. 11, 1998

In 1995, Antoinette Reason was involved in a car accident in which she ran a red light and hit a vehicle owned by Delmarva Power & Light Company. She was fined for driving without insurance. In addition, Delmarva brought an action against her in Justice of the Peace Court. Ms. Reason retained Maguire to represent her in connection with that action. On her behalf, Maguire filed a third-party complaint against Crown Auto Outlet, Inc. alleging that Crown Auto, which had sold Ms. Reason her vehicle, had misled her by persuading her to obtain insurance from someone who issued her a false insurance card. Subsequently, Delmarva and Ms. Reason entered into a settlement pursuant to

---

1. The Board acknowledged that an attorney's intention to return the money is irrelevant to the question of whether a disciplinary violation oc-

curred. *In re Figliola*, Del.Supr., 652 A.2d 1071, 1076 (1995).

which Ms. Reason agreed to pay $5,780.84 plus court costs and interest to Delmarva.

After the trial of Ms. Reason's claims against Crown Auto, the Justice of the Peace Court entered a $9,405.84 judgment in favor of Ms. Reason and against Crown Auto. Crown Auto filed an appeal *de novo* in the Court of Common Pleas and soon thereafter, counsel for Crown Auto called Maguire and offered to settle the case. Maguire alleges that he spoke to a representative of Delmarva and obtained an indication that Delmarva might accept half of the amount due from Ms. Reason in satisfaction of the outstanding debt. Maguire claims that he assured Ms. Reason that he would pay off the Delmarva judgment against her if she accepted Crown Auto's settlement offer and that she agreed to that proposal. Subsequently, counsel for Crown Auto sent a $4,702.92 settlement check to Maguire in satisfaction of the settlement with Ms. Reason. Maguire deposited the settlement check into his attorney's account. During the next few weeks, Maguire depleted the account that held the Reason settlement funds. As of May 16, 1997, the attorney's account held a balance of only $50.80. As discussed above, the Delaware Supreme Court suspended Maguire from the practice of law on May 19, 1997.

On May 21, 1997, Maguire called a Delmarva employee to see if Delmarva would accept half of the debt in settlement. In response, the Delmarva employee demanded $4,700 and Maguire accepted this demand. On that same day, Maguire sent a fax to Delmarva memorializing the agreement that the claim would be settled on the terms discussed that day.

Maguire failed to pay Delmarva the funds that he had agreed to pay, nor did he deliver such funds to Ms. Reason. Ms. Reason remains liable to Delmarva for the outstanding debt. Maguire asserts in mitigation that Ms. Reason owed him more than $5,000 in unpaid fees and disbursements, and that she had agreed that he could apply the settlement

amount to those statements, provided that he also paid off her Delmarva debt.[2]

Maguire admits that he violated Rule 8.4(c) by engaging in "conduct involving dishonesty, deceit, fraud or misrepresentation" by failing to pay off the Delmarva judgment, as he asserts he had represented to Ms. Reason that he would.

Maguire has also presented to the panel two promissory notes. Pursuant to the first note, Maguire has agreed to make payments totaling $4,700 either directly to Conectiv (Delmarva's successor) or to the Lawyers' Fund for Client Protection in the event that the fund pays the claim, which is now under consideration. The second note relates to the fine assessed against Ms. Reason. There is some evidence that the fine is not enforceable due to the state's failure to pursue the matter. In any event, if Ms. Reason is found to have an obligation to pay the fine and the Fund disburses funds to satisfy the fine, Maguire has promised in the second note to reimburse the Fund for the fine. Similarly, if Ms. Reason pays the fine herself, he has agreed to reimburse her directly.

### Board Case No. 102, 1997

In 1993, Josephine Lunness filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against her employer. In September 1995, a Pennsylvania attorney referred Ms. Lunness to Maguire to have him handle the EEOC claim. Although the written referral agreement sent by Maguire to the Pennsylvania lawyer provided for a consulting fee to be paid to the Pennsylvania lawyer, the agreement did not contemplate that the lawyers would each be compensated in proportion to the respective services performed, nor did Maguire provide Ms. Lunness with a written agreement pursuant to which the two lawyers assumed joint responsibility for the representation. Subsequently, Ms. Lunness was injured in an automobile accident and retained Maguire to represent her in that matter as well.

---

2. The ODC had originally asserted a claim that Maguire had continued to practice law in violation of the interim suspension order by means of his actions on May 21, 1997 with respect to the Reason matter. In response, Maguire asserted

that he viewed the Reason debt as a personal debt which he had assumed from the client and did not believe that he was engaging in the practice of law by satisfying that obligation. Thereafter, the ODC elected to dismiss the claim.

On July 12, 1996, Ms. Lunness' insurance company sent a check to Maguire which was payable to both Ms. Lunness and Maguire. Maguire endorsed the check with Ms. Lunness' name without indicating in any way that he was signing with her authorization. Maguire asserts that he had authorization to sign Ms. Lunness' name to the check. In addition, he asserts that the funds received were used pay costs associated with a brief filed on Ms. Lunness' behalf and the cost of storing her damaged vehicle at a service station.

Maguire admits that he violated Rule 8.4(c) by engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation" by signing Ms. Lunness' name to the check without indicating that he was signing her name for her.[3] He also admits that he violated Rule 1.5(e) in that the division of fees with respect to the referred matter was not going to be made in proportion to the respective services performed by the two lawyers, but he failed to obtain a written agreement with the client to the effect that the two lawyers would be jointly responsible for the representation. Finally, Maguire admits that he violated Rule 8.4(a) by attempting to divide a prospective fee in violation of Rule 1.5(e).

### Board Case No. 98, 1997

Roland S. Rollins retained Maguire to represent him in connection with claims against his employer. Mr. Rollins filed a discrimination complaint with the EEOC on January 27, 1995. On the complaint form, Mr. Rollins designated Maguire as his attorney. According to Maguire, although he had represented Mr. Rollins in a previous similar discrimination case, he was not aware that Mr. Rollins had designated him as his attorney in the 1995 complaint. Subsequently, Maguire was contacted and asked about Mr. Rollins' position on the complaint. Without consulting Mr. Rollins, Maguire filed a document withdrawing the complaint and signed the docu-

ment as "attorney for complainant." Maguire subsequently failed to discuss with Mr. Rollins notices he received concerning Mr. Rollins' appeal rights. When Mr. Rollins inquired in February 1997 about the status of his discrimination case, he learned that the complaint had been withdrawn. On March 4, 1997, Maguire filed an appeal seeking to reinstate the complaint stating that he did not have authority to withdraw the complaint on Mr. Rollins' behalf because he did not represent him in the discrimination complaint. Nevertheless, the appeal was dismissed.

Maguire admits that he violated Rule 1.4(b) by failing to consult with Mr. Rollins prior to agreeing to dismiss the discrimination complaint.

### Board Case No. 123, 1997

In 1995, Marie Potts retained Maguire to represent her in a federal employment action against her former employer. On October 23, 1995, Maguire filed a discrimination case on Ms. Potts' behalf. At her deposition in June 1996, Ms. Potts was questioned about documents filed on her behalf that she had not seen. Subsequently, in a series of letters directed to Maguire, Ms. Potts requested that Maguire send her copies of documents that he had filed in court on her behalf as well as copies of documents filed by the opposing party.[4] Maguire failed fully to comply with her requests. Maguire admits that he violated Rule 1.4(a) by failing to keep a client "reasonably informed about the status of a matter and promptly comply with reasonable requests for information" by failing to keep Ms. Potts reasonably informed about the status of the matter.

### Board Case No. 57, 1997

In May 1995, Bruce Joyner retained Maguire to represent him in a pending matter before the Industrial Accident Board. Mr.

---

3. In investigating the matter, ODC concluded that there was some factual support for Maguire's assertion that he had the client's consent to his endorsement of the check.

4. Maguire asserted in mitigation that after he and Ms. Potts participated in a telephone confer-

ence with Judge Longobardi concerning this issue, Ms. Potts copied pleadings in his office. Maguire believed that Ms. Potts was satisfied at that point because she did not thereafter complain to him.

Joyner's former employer had filed a petition seeking to terminate Mr. Joyner's temporary total disability benefits under a prior agreement. A hearing on the petition was scheduled for June 26, 1995. When Maguire reviewed Mr. Joyner's file, he discovered that no medical witnesses had been subpoenaed by prior counsel and that it was too late to do so. Maguire therefore concluded that Mr. Joyner would not prevail at the hearing. However, Mr. Joyner did not agree to relinquish his claim for temporary total disability benefits. At the end of the day on the last business day before the scheduled hearing, Maguire contacted the employer's attorney and advised her that Mr. Joyner consented to the employer's petition to terminate benefits. Maguire failed to contact Mr. Joyner to inform him of this action. When Mr. Joyner appeared for the hearing on June 26, 1995, he was advised by an IAB employee that the hearing had been canceled because of his consent to the petition. Subsequently, Mr. Joyner wrote to the IAB seeking reconsideration.

On July 18, 1995, Maguire filed a notice to reopen the matter due to a "mistake of fact." The precise wording of Maguire's statements in support of the motion, while not saying so explicitly, could have given the members of the IAB the impression that he had discussed the consent to the petition to terminate with his client before giving the consent. Attached to the motion to reopen was a letter from Mr. Joyner's doctor, confirming Mr. Joyner's temporary total disability. Both the IAB and the Superior Court refused to reopen the matter because they had the impression that Maguire had represented to them that Mr. Joyner had been aware of the agreement and had approved of it.

Maguire admitted that he violated Rule 1.2(a) by agreeing to the employer's petition to terminate total disability benefits without Mr. Joyner's consent. Maguire also admits that he violated Rule 1.7(b) by representing Mr. Joyner in the motion to reopen the matter despite the fact that Mr. Joyner's position on the matter was directly adverse to Maguire's interests and by failing to discuss that conflict with Mr. Joyner.

### Board Case No. 101, 1997

In connection with the May 19, 1997 order of interim suspension, the Court of Chancery entered an order appointing a receiver for Maguire's law practice. The receivership order provided that the receiver "shall have the power and authority to discharge ... any and all debts of the law practice" and that Maguire "shall cooperate fully with the Receiver in the performance of the Receiver's duties." In connection with performing these duties, the receiver asked Maguire whether he had any blank checks for his attorney's account. On more than one occasion, Maguire advised the receiver that he had no such blank checks.

On May 29, 1997, Maguire issued a check from his attorney's account in the amount of $500 to a former client as a partial refund of an unearned $1,500 retainer. Maguire did not inform the receiver of this action. The check was returned for insufficient funds. At the hearing, Maguire's counsel advised the panel that although the preceding facts are true, Maguire had deposited $500 into the attorney's account immediately prior to writing the check and he intended to write the $500 check against those funds.

Maguire admits that he violated Rule 3.4(c) by "knowingly disobey[ing] an obligation under the rules of a tribunal" by failing to cooperate with the receiver's efforts to gain control over the books and records of his practice of law.

### Board Case No. 56, 1997

In January 1997, the accountant for the Lawyers' Fund for Client Protection notified Maguire of the fact that his books and records would be subjected to a compliance audit. Through counsel, Maguire informed the accountant that "virtually all" of the documents which had been requested had inadvertently been discarded. On February 4, 1997, the accountant issued the report on his compliance audit. In that first report, the accountant concluded that Maguire had incorrectly certified on his annual registration statement that (a) he was properly maintaining cash receipts and cash disbursement journals, (b) he was performing monthly reconciliations for his bank accounts and (c) all

tax returns had been timely filed and all taxes paid on a timely basis. Maguire was notified of the conclusions reached in the report and given an opportunity to put his records in compliance. On May 16, 1997, the accountant conducted a follow-up audit and issued a second report. In the second report, the accountant concluded that several instances of non-compliance had not been corrected.

Maguire admits that he violated Rule 1.15(d) by failing to comply with the requirements for keeping books and records set forth in Interpretive Guideline No. 2. Maguire also admits that he violated Rule 1.15(a) by failing to preserve complete records of attorney account funds for a period of five years after the completion of the events that they recorded and by failing to preserve his financial books and records for the required period.

### AGGRAVATING AND MITIGATING CIRCUMSTANCES

The Board determined that the aggravating circumstances which must be considered in connection with this matter are as follows: Maguire's substantial experience in the practice of law; the fact that two of Maguire's violations resulted from his dishonest conduct with respect to client funds; the fact that Maguire has committed multiple violations in the matters under consideration; and Maguire's prior disciplinary history.

Maguire has received sanctions in two previous disciplinary proceedings. In *In re Maguire*, Board Case No. 953 (July 2, 1986), the Board imposed a two-year public probation for violation of the following disciplinary rules: DR 6–101(A)(2) (lack of adequate preparation), DR 7–101(A)(3) (failure to satisfy government lien out of settlement proceeds), DR 9–102(b)(3) (failure to maintain complete records), DR 9–102(B)(4) (failure to promptly deliver to client funds that the client is entitled to receive) and DR 2–106(A) (excessive fee). In *In re Maguire*, Del.Supr., No. 562, 1992, Veasey, C.J. (Feb. 9, 1993) (ORDER), the Court approved a one-year public probation for violation of Rules 1.5(a) (unreasonable fee), 1.7(b) (conflict of interest), and 1.8(a) (conflict of interest in business transaction with client). The Board concluded an additional aggravating circumstance is the fact that some of the types of violations which Maguire has admitted in the instant proceeding are of a nature similar to those for which he has previously been sanctioned.

The Board also considered the following mitigating circumstances. Maguire has a history of personal and psychological problems. First, Maguire is a recovering alcoholic who has undergone treatment for his condition since the early 1980's. *See In re Clyne*, Del.Supr., 581 A.2d 1118, 1119 (1990). In addition, Maguire was diagnosed in 1986 as having a bi-polar condition. Subsequently, he began to obtain some professional assistance in dealing with that condition. More recently, he has been diagnosed as suffering from a psychological disorder. Finally, Maguire suffers from diabetes and the accompanying fluctuations in his blood sugar and medication have had a profound psychological impact on Maguire during the last several years as well. *In re Higgins*, Del.Supr., 565 A.2d 901, 907 (1989); *In re Sullivan*, Del. Supr., 530 A.2d 1115, 1119 n. 5 (1987).

The Board has also considered in mitigation the fact that Maguire has cooperated with the Office of Disciplinary Counsel and has expressed remorse for his wrongdoing. As evidence of his willingness to cooperate, Maguire has offered to make restitution with respect to the Reason matter and has submitted two promissory notes to the Board for its consideration.

Finally, at the time of his interim suspension in May 1997, Maguire submitted an irrevocable letter of resignation to the Supreme Court. The Court declined to act upon that letter until after disciplinary proceedings had concluded. At the hearing on August 27, 1998, Maguire submitted another voluntary irrevocable letter of resignation to the Board. As part of the decision concerning the recommended sanction, the Board considered this letter as well. The Board noted that Maguire understands that he will be receiving some form of public discipline and was not seeking to tender his letter of resignation to avoid that result.

### Board Recommended Sanction

The Board determined that if Maguire's letter of resignation is accepted by this Court, but accompanied by a serious form of sanction, the interests of the "integrity of the legal profession, the administration of justice, and the protection of the public" will be served. Therefore, the Board recommends that the Court enter an order suspending Maguire from the practice of law for a three-year period. Alternatively, the Board recommends that the Court enter an order accepting Maguire's voluntary irrevocable letter of resignation and strike Maguire's name from the rolls of attorneys of the Court authorized to practice law in the State of Delaware and in the Courts thereof, without Maguire having any opportunity to reapply for membership. Finally, the Board recommends that the Court require Maguire to deliver and honor the promissory notes with respect to restitution in the underlying matters.

### STANDARD OF REVIEW

█ This Court has made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Report. Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings. *In re Higgins,* Del.Supr., 582 A.2d 929, 932 (1990). We review the Board's conclusions of law *de novo. Id.* We are satisfied that the record before us supports the findings of fact and the conclusions of law made by the Board in this case. *Id.*

### SANCTION DETERMINATION

█ The inherent and exclusive authority for disciplining members of the Delaware Bar is vested in this Court. *In re Green,* Del.Supr., 464 A.2d 881, 885 (1983). The primary purpose of disciplinary proceedings is "to protect the public; to foster public confidence in the Bar; to preserve the integrity of the profession; and to deter other lawyers from similar misconduct." *In re Agostini,* Del.Supr., 632 A.2d 80, 81 (1993), *citing In re Brewster,* Del.Supr., 587 A.2d 1067, 1070 (1991). The lawyer discipline system is not penal or punitive in nature. *See*

*In re Christie,* Del.Supr., 574 A.2d 845, 853 (1990); *see also In re Rich,* Del.Supr., 559 A.2d 1251, 1257 (1989); *In re Bennethum,* Del.Supr., 161 A.2d 229, 236 (1960).

█ The Court has wide latitude in determining the form of discipline to be imposed. *In re Member of the Bar,* Del.Supr., 226 A.2d 705, 707 (1967). In imposing sanctions, we are guided by our prior precedents. *See In re Christie,* Del.Supr., 574 A.2d 845, 853 (1990). "Those prior precedents reflect, *inter alia,* that this Court has cited, with approval, the ABA Standards for Imposing Lawyer Sanctions." *In re Barrett,* Del. Supr., 630 A.2d 652, 656 (1993); *see, e.g., In re Brewster,* Del.Supr., 587 A.2d 1067, 1069–71 (1991). The American Bar Association Standard for Imposing Lawyer Sanctions most relevant in Maguire's case provides:

> 4.1 Failure to Preserve the Client's Property
>
>> Absent aggravating or mitigating circumstances, upon application of the factors set out in 3.0, the following sanctions are generally appropriate in cases involving the failure to preserve client property:
>
> 4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

ABA Standards for Imposing Lawyer Sanctions, Standard 4.1. The four factors to be considered pursuant to ABA Standard 3.0 are: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standards for Imposing Lawyer Sanctions, Standard 3.0. *In re Agostini,* 632 A.2d at 81 n. 2, *citing* ABA Standard 3.0.

█ At the May 1997 hearing on the petition for interim suspension, Maguire tendered his letter of resignation. This Court does not permit members of its Bar to either resign or retire during the pendency of disciplinary proceedings. Accordingly, the Court declined to accept Maguire's resignation at that time. The Court noted, however, that it "will consider the letter in resolving the underlying disciplinary proceedings." *In re*

*Maguire,* Del.Supr., No. 204, 1997, 1997 WL 328588, *1 (May 19, 1997). Whether a resignation or retirement during the pendency of disciplinary proceedings is ultimately accepted depends on the Court's assessment of the impact that the resignation or retirement will have on public policy interests such as the integrity of the legal profession, the administration of justice, and the protection of the public. *In re Lassen,* Del.Supr., 672 A.2d 988, 1000 (1996), *citing* Lori J. Henkel, *Annotation, Propriety of Attorney's Resignation From Bar in Light of Pending or Potential Disciplinary Action,* 54 A.L.R.4th 264, 278 (1987).

Defalcations by members of the Delaware Bar are, fortunately, very infrequent events. *See* Delaware Lawyers' Fund for Client Protection, Twenty–Fifth Anniversary Report (1993). This Court has not adopted a *per se* rule that disbarment is mandatory but has attempted to adopt a policy that is consistent with, and protective of, the public interest whenever a lawyer has converted a client's funds. Sanctions resulting from the misappropriation of a client's property have varied. *In re Higgins,* Del.Supr., 582 A.2d 929 (1990). *See also In re Barrett,* Del.Supr., 630 A.2d 652 (1993); *In re Frabizzio,* Del.Supr., 498 A.2d 1076 (1985); *In re Reed,* Del.Supr., 369 A.2d 686 (1977); *In re Green,* Del.Supr., 331 A.2d 145 (1975).

### *DISBARMENT APPROPRIATE*

■ "The misappropriation of a client's funds is one of the most egregious acts of professional misconduct that any attorney can commit." *In re Higgins,* Del.Supr., 582 A.2d 929, 932 (1990). Maguire has a record of repeated professional misconduct. As a result of the present proceedings, this Court was advised during oral argument, that the Lawyer's Fund for Client Protection has paid $39,840 in claims by Maguire's clients that were attributable to either his defalcations or inability to refund unearned fees. Based on our evaluation of the aggravating and mitigating factors affecting Maguire's pattern of professional misconduct that culminated in his misappropriation of client's funds, we have concluded that disbarment is required

to protect the public and to uphold the integrity of the legal profession in Delaware.

Therefore, it is adjudged and ordered, pursuant to this Court's exclusive jurisdiction over the Delaware Bar, that Michael P. Maguire be disbarred. His name shall be immediately stricken from the Roll of Attorneys entitled to practice before the courts of this State. This Opinion is to be disseminated by Disciplinary Counsel in accordance with Rules 3 and 14 of the Rules of the Board on Professional Responsibility.